Pennsylvania Railroad Company et al., Appellants, v. Public Service Commission et al.

Argued April 10, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*A. M. Donnan,* for appellant, No. 220.

*Rabe F. Marsh,* for appellant, No. 221.

*George W. Keitel,* Assistant Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, for Department of Highways, intervenor.

*Frank A. Rugh,* for Thomas R. Battle, intervenor.

*John C. Kelley* and *Richard J. Beamish,* with them *Samuel Graff Miller,* for appellee.

OPINION BY KELLER, P. J., July 18, 1935:

The main line of the Pennsylvania Railroad bisects the Borough of Penn in Westmoreland County, from east to west, causing a dangerous grade crossing over four railroad tracks at Harrison Street, a principal street of the borough running north and south. The borough has between 1,000 and 1,500 inhabitants, many of whom work in Jeannette, a much larger industrial borough located south of the Pennsylvania Railroad and adjoining the eastern boundary of that part of Penn Borough which lies south of the railroad. The eastern boundary of Penn Borough north of the rail-

road is at the west side of a street or road known as Eleventh Street, in the Township of Penn.

In 1889, pursuant to an order of the Court of Quarter Sessions of Westmoreland County the Pennsylvania Railroad built a bridge across its tracks at Eleventh Street (Penn Township), known as the Burrell bridge, at a point about 1,800 feet east of the Harrison Street crossing aforesaid, in elimination of another grade crossing then existing, approximately 100 feet west of the bridge site. The court order made no provision for the maintenance of the bridge. It was maintained by the railroad company until 1918, when a controversy arose with Penn Township regarding its future maintenance, resulting in an agreement on September 9, 1922, which provided for its maintenance by the railroad company until December 13, 1930, but made no provision thereafter. On October 1, 1931 the bridge, being in bad physical condition, was closed to traffic by the railroad company and on February 28, 1932, without making any application to, or securing the necessary approval of, the Public Service Commission for such action, the railroad company removed the superstructure of the bridge.

On May 28, 1932 Thomas R. Battle filed his petition with the Public Service Commission, setting forth that he and his family and many other families on the north side of the railroad in the vicinity of Burrell bridge had no means of crossing the railroad tracks unless they traveled about one-half mile westward and used the grade crossing at Harrison Street, returning the same way; that many children from the neighborhood who attended school in the south side of Penn Borough, were compelled to make this long trip twice a day, since the Burrell bridge was removed; and praying that the Commission order the construction of a new bridge at or near the former site of the Burrell bridge. The Pennsylvania Railroad Company, the Borough of

Penn, the Borough of Jeannette and the Township of Penn were named as interested parties by reason of the location of the bridge and the approaches thereto. They severally filed answers to said petition.

On January 7, 1933, before any testimony had been taken on the Burrell bridge petition, the County of Westmoreland filed its complaint before the Public Service Commission praying for the abolition of the Harrison Street grade crossing, as a dangerous crossing, and the substitution of a subway, or of a convenient crossing *over* [above] the tracks of the railroad in the Borough of Penn, or east of it in Penn Township at some convenient point which would serve the residents both of the borough and township aforesaid. Answers to this complaint were severally filed by the Pennsylvania Railroad Company, the Borough of Penn, the Township of Penn and the Borough of Jeannette.

These two complaints were consolidated by the Commission for hearing and determination. At the hearings, W. D. Wiggin, chief engineer for the Pennsylvania Railroad Company, Central Region, and L. J. Riegler, engineer of the Pennsylvania Railroad Company, whose work for ten years had been largely in connection with grade crossing elimination, both testified that the only feasible and practicable plan of dealing with the problem and providing a substitute for the grade crossing at Harrison Street—that is, within reasonable cost or expense limits—was the same in essential details as a plan which had been prepared by the railroad company's engineers in the spring of 1931, in connection with a proposed agreement (subject to the approval of the Public Service Commission) between the railroad company, the County of Westmoreland, the supervisors of Penn Township, the burgess and council of Penn Borough and the burgess and council of Jeannette Borough. This agreement called for the abolition of the grade crossing at Harrison Street; the

construction by the railroad company, at its own cost, of a pedestrian subway at Harrison Street; the reconstruction by the railroad company at its own cost of the Burrell overhead bridge, with a twenty-four foot roadway and one sidewalk; the county was to grade and pave Eleventh Street from the Jeannette-Manor Highway to Locust Street, including the approaches to the new Burrell bridge, but exclusive of the bridge structure, and to grade and pave Locust Street (partly in Penn Borough and partly in Penn Township) from Eleventh Street to Harrison Street, for a width of 20 feet, with concrete; the municipalities were to pass the necessary ordinances and measures and take care of the respective land damages, except the railroad company's. The agreement never was submitted to the Public Service Commission because it failed of passage by one vote in the council of Penn Borough.

The railroad company's engineers, as aforesaid, testified that they had given ten years thought and planning to the question; that an overhead bridge at Harrison Street would cost about $175,000; the cost of an overhead crossing at Youghiogheny Street, which is midway between Harrison Street and Burrell bridge, was about $280,000; that a pedestrian subway or overhead foot bridge could take care of the pedestrian traffic at Harrison Street; and that, on account of the grade, it was not practicable to build a vehicular subway at Harrison Street, nor was it feasible and practicable to construct a bridge or overhead vehicular crossing, within reasonable cost limits, at any point except at the Burrell bridge site. The cost of the pedestrian subway, according to this plan, was $25,000; a foot bridge, it was said, would cost $16,000 less. The cost of the new Burrell bridge, exclusive of approaches, was $33,000. They therefore recommended the adoption of the plan, substituting, however, a foot bridge instead of the pedestrian subway, solely because of its lower cost, and

announced the willingness of the railroad company to pay the cost of the foot bridge and the new Burrell bridge substructure and superstructure. They stated that the grade south of the railroad was prohibitive of any overhead vehicular bridge except at the Burrell bridge location.

The Commission, after full hearing and mature consideration, on April 2, 1934, filed its report holding that the Harrison Street grade crossing, although protected by railroad watchmen and gates for twenty-four hours daily, was dangerous, owing to the large number and high speed of trains operated over the tracks at that location and the curve and elevation of the tracks, and should be abolished; and adopted a plan eliminating the same, which in essential engineering details was the original plan or project prepared by the railroad company's engineers and presented to the municipalities. It provides for the abolition of the grade crossing at Harrison Street and, in lieu thereof, the construction by the railroad company, at its expense, of a pedestrian subway—which it found much preferable to a foot bridge—at an estimated cost of $25,000; the reconstruction by the railroad company, at its expense, of the Burrell bridge, at an estimated cost, for the substructure and superstructure, including the roadway paving thereon, but not including approaches, of $33,000; that the County of Westmoreland construct the approaches to the new bridge and extend Locust Street from the borough limits to Eleventh Street, and improve the same with a concrete roadway from Harrison Street to Eleventh Street, at an estimated cost of $40,672.94, of which the railroad company was ordered to pay to the county the sum of $25,000; the railroad company was also ordered to pay any money to which it might be entitled as compensation for damages for its property taken, etc., by the improvement, and the Borough of Jeannette, the Borough of Penn and the Township

of Penn were respectively ordered to pay the compensation for damages due owners, other than the railroad company, of property taken, etc., by the improvement. The railroad company was also ordered to maintain the new bridge (including the paving thereon) and the subway; and the boroughs and township were ordered to maintain the portions of the approaches and of Locust Street within their respective limits. It is not necessary to give further details of the order.

On April 19, 1934 the railroad company filed its petition for a rehearing and reconsideration, complaining, especially, that the order required it to contribute $25,000 toward the improvement of streets in the Borough of Penn, and alleging that the apportionment of the cost was unreasonable and burdensome to it for the reason that it placed on the railroad company a large share of the burden, which properly and equitably belonged to the municipal corporations concerned.

On April 25, 1934 the Borough of Penn filed its petition for a rehearing and reconsideration, objecting especially to the abolition of a vehicular crossing at Harrison Street, on the ground of the inconvenience to its citizens, the depreciation of their property caused thereby and the consequent damages, and the lack of adequate fire protection, as the fire engine house is located south of the railroad.

The Commission, on June 25, 1934, dismissed both these petitions. No appeal was taken by any party from this action, or from the order of the Commission of April 2, 1934, within the time limited by law.

Nearly five months thereafter, and nearly four months after the order of the Commission became final and not subject to appeal, on November 17, 1934, the railroad company and the Borough of Penn presented a joint petition asking the Commission to reopen and reconsider its order of April 2, 1934, setting up two new grounds of complaint: (1) That it was feasible

and practicable to construct an overhead vehicular crossing at Harrison Street at a cost of some $90,000, and a foot bridge at the Burrell bridge site for $4,000; (2) that they had learned that Harrison Street in the Borough of Penn had been taken over by the Department of Highways of the Commonwealth, for the purpose of construction and maintenance, pursuant to the provisions of the Act of June 1, 1933, P. L. 1172, (p. 1330); and that the Department of Highways should be made a party to said proceedings and a fair share of the cost of the improvement and its maintenance allocated against it. Answers to this joint petition were filed by interested citizens, and on December 11, 1934 the Commission dismissed the petition stating in the order that the matters and things involved had been fully considered and that nothing appeared to convince the Commission that the rehearing and reconsideration prayed for was necessary or advisable in the public interest. From the order dismissing the joint petition for rehearing and reconsideration the railroad company and Borough of Penn took separate appeals to this court.

On April 10, 1935 the Attorney General of the Commonwealth, acting on behalf of the Department of Highways, asked leave to intervene as an appellee in the proceedings, which was granted, and he thereupon filed a brief, as attorney for the Department of Highways, intervenor, and an Assistant Deputy Attorney General, a member of his staff, made an oral argument, in support of the order of the Commission and in opposition to the review and reconsideration thereof asked for by the appellants, and the allocation of any of the cost of the proposed improvement against the Department of Highways.

It must be remembered that these appeals were not taken from the order of the Commission of April 2, 1934, or from the order dismissing the several petitions

for rehearing and reconsideration filed within thirty days after the Commission's order. The order of the Commission of April 2, 1934 became final and effective, when no appeal from it or the order dismissing the several petitions for a rehearing was taken within the time limited by law; the parties thereby, in effect, consented and agreed that it was reasonable and in conformity with law.

The present appeals are from an order of the Commission refusing to review and reconsider its original order, made nearly four months after that original order of the Commission had become final and not subject to appeal. In an action at law these appeals would not lie, but would be dismissed as an attempt to evade the statute limiting the time within which appeals may be taken: Mayer v. Brimmer, 15 Pa. Superior Ct. 451, 454. The same strict ruling will not be applied in a proceeding of this kind, but the grounds for a reconsideration should be restricted to the new matters and new or changed conditions set up in the joint petition, which had arisen since and were not presented in the several petitions of these appellants filed April 19, 1934 and April 25, 1934 respectively, and dismissed by the Commission on June 25, 1934 and not appealed from. See D. & H. Co. v. P. S. C., 96 Pa. Superior Ct. 169; A. T. & S. F. Ry. Co. v. United States, 284 U. S. 248. Parties, even in a proceeding of this kind, cannot be permitted, by a second motion to review and reconsider, to raise the same questions which were specially considered and decided against them and not appealed from. A motion to reconsider cannot be made a substitute for an appeal, after the time for taking an appeal has expired.

We are not to be understood, by this action, as approving, in detail, everything contained in the order of April 2, 1934, as on an appeal from that order. But this whole controversy is due in large measure to the

arbitrary and unwarranted action of the railroad company in removing the Burrell bridge without first applying to and securing the consent of the Public Service Commission to such removal. In view of this fact and of the additional fact that the plans prepared by the railroad company and presented by it for the approval of the municipal authorities interested, called for the construction by the railroad company at its own expense of the pedestrian subway to be erected at Harrison Street in lieu of the grade crossing there, and of the substructure and superstructure of the new Burrell bridge, including the road paving over the bridge, we would not deem it unreasonable, if the matter were properly before us on appeal, for the Commission to order the Pennsylvania Railroad Company to pay for the cost of erecting the subway at Harrison Street and the new Burrell bridge and its approaches at both ends. The approaches to a bridge are part of the bridge and may be so considered by the Commission in adopting plans for a bridge to eliminate a grade crossing. Furthermore, the railroad company, by the abolition of these grade crossings, is relieved of the expense of maintaining gates and watchman service for twenty-four hours a day, as well as liability for damages from collision. Of its own accord it recognized its responsibility for most of the structures necessary to eliminate the crossing, and prepared a plan accordingly, (See P. R. R. Co. v. P. S. C., 105 Pa. Superior Ct. 60, 64, 160 A. 161). The Commission did not separate the cost of constructing the approaches to the new bridge from that incident to the improvement of Locust Street as already laid out and opened as a borough street. Had the railroad company taken an appeal from the order of the Commission, following the dismissal of its first petition to reconsider the order, because of the allocation against it of $25,000 of the cost chargeable against the County—rather than the cost of the approaches to the

bridge—a different question might be presented; for it is not within the functions of the Commission, in a proceeding to abolish a grade crossing, to impose the cost of paving highways, already laid out and opened, and which do not form part of the approaches to a bridge to be constructed in elimination of the grade crossing, on railroads and other parties interested, to the relief of the municipality benefited; any more than it is within its province to include a state highway relocation, in the plan of eliminating a grade crossing and saddle the cost of the same on the railroad and other parties interested in abolishing the crossing (Erie R. R. Co. v. P. S. C., 77 Pa. Superior Ct. 196). But after specially raising the question by a petition to reconsider, the railroad company took no appeal from the order of the Commission or the dismissal of its petition.

By its failure to appeal in time, the railroad company has relieved us of the necessity of considering this point; but our affirmance of the order of the Commission is not to be understood as approving the practice.

For reasons already given, therefore, we shall not consider, in this appeal, questions which should have been raised on an appeal from the order of the Commission filed April 2, 1934, or from the order refusing to review and reconsider that order, filed June 25, 1934. Most of the cases cited by the railroad company deal with those questions, which are not properly before us in this appeal. The very recent decisions of the United States Supreme Court in Lehigh Valley Railroad Co. v. Board of Public Utility Commrs., 278 U. S. 24, and Nashville, Chattanooga & St. Louis Ry. v. Walters, 295 U. S. 405, are in that category. In all of the cases relied on, an appeal was promptly taken by the appellant from the order complained of. In none of them, did the appellant acquiesce with the decision, until the order had become final and not sub-

ject to appeal, and then by injecting a new question in the case attempt to reopen and review matters which had been raised and finally decided against it.

We come then to the new grounds presented for reviewing and reconsidering the order.

(1) The Commission cannot justly be criticized because it did not give much weight to the belated suggestion of the railroad company that a feasible and practicable plan for building an overhead bridge at Harrison Street could be put through at a total cost of $90,000, or about half its previous estimate. Its engineers, who had studied the situation closely for nearly ten years had testified positively that an overhead bridge at Harrison Street was not practicable; that the grade was such as to make the cost of any safe and convenient overhead bridge prohibitive at any point except the Burrell bridge location. Evidence could not be more direct or positive than was furnished by the railroad company's own engineers that the *only* site available for an overhead bridge was at the Burrell bridge location. The plan adopted by the Commission was for all practical purposes the plan prepared by the railroad company, which definitely called for the construction of the pedestrian subway at Harrison Street and the reconstruction of the Burrell bridge by the railroad company "in accordance with plans prepared by Pennsylvania Railroad Company." The positive evidence of the railroad company's engineers, showing full knowledge of the situation and long study of the problem cannot be set aside by the unsupported affidavit of one of them to the petition proposing the new plan, which calls for a considerable increase of grade to the approaches and a division of the cost of construction and maintenance between the railroad company and the Department of Highways. No reason is given in the petition why this plan could not have been prepared and presented ear-

lier. It does not strictly come within the description 'new conditions' (D. & H. Co. v. P. S. C., supra); for the engineering conditions had not changed. It would appear that the railroad's change of front is due to the discovery that Harrison Street at this point is now a state highway, and while the plan of construction is less desirable, its defects might be compensated for by a division of the cost.

There is ample evidence to support the Commission's finding that the plan adopted by it is the most feasible and practicable and least expensive method of eliminating the grade crossing.

(2) The other ground for review presented by the appellants may be considered under two heads: (a) the attempt to make the Department of Highways contribute to the cost of eliminating the Harrison Street grade crossing; (b) the effect on the legality of the plan of the failure of the Commission to make the Department of Highways a party to the proceedings.

(a) The Department of Highways, which has intervened in this appeal, relies on the Acts of June 26, 1931, P. L. 1388 and June 1, 1933, P. L. 1402, which amended the tenth section of the Act of May 31, 1911, P. L. 468, establishing the Department of Highways— which section, as originally passed, related to roads, streets and highways in boroughs, and authorized the improvement or reconstruction of certain streets by the Secretary of Highways with the consent of the borough council—and in substance provides that nothing contained in said section ten shall authorize any assessment to be made against the Commonwealth by reason of, or to assist in the elimination of, any grade crossing on any highway within the limits of a borough or incorporated town, and "no such assessment shall hereafter be made under any act of Assembly heretofore enacted."

The appellants contend that these amendments are

unconstitutional because they (1) relate to matters germane to the Public Service Company Law and the exclusive power of the Commission to eliminate grade crossings (Act of July 26, 1913, P. L. 1374, Art. V, sec. 12) and allocate part of the cost against the Commonwealth, payable out of funds appropriated for the improvement of roads and highways, and not to the Act creating the Department of Highways; and (2) do not clearly set forth in their title any notice of an intention to affect the authority of the Public Service Commission in this respect.

We will meet this issue when the Commission imposes a part of the cost of eliminating a grade crossing on the Department of Highways, or asserts that it would impose part of such costs on the Department of Highways were it not for these amendments to the Act of 1911, P. L. 468. No one can question the constitutionality of an act of assembly who is not affected or injured by it. The constitutionality of these amendments cannot be questioned in the review of an order which does not mention them, rely upon them, uphold them, reject them or take any action, or refuse to take action, because of them; nor is the new Burrell bridge, to be constructed under the order of the Commission, located in any borough or on the line of a state highway. These amendments are, therefore, not before us for consideration, and we will not pass upon their constitutionality until the question is raised by one who has been injured by a decision affecting them.

(b) But the question does arise as to the effect of the failure of the Public Service Commission to bring the Department of Highways in as a party to these proceedings, following the Act of 1933, P. L. 1172, 1330, which made Harrison Street, at the point where it crosses the Pennsylvania Railroad, a state highway.

Of course, the Commission should have made the Department of Highways a party to the proceedings as

soon as it was learned that Harrison Street, at the point where the grade crossing was sought to be abolished, was a state highway. Irrespective of whether it could be required to contribute to the cost of eliminating the grade crossing, it was an interested party, and should have been served with notice of the pending proceedings. If the Department of Highways had not intervened, or, intervening, had raised any objection to the plan adopted by the Commission, including the abolition of the grade crossing at Harrison Street, we would have reopened the proceeding and sent it back to the Commission for reconsideration on that account. But the Department of Highways has intervened, has filed a brief and made an oral argument in support of the Commission's order. It is now a party. Good faith, and fair treatment of the railroad company and other interests involved, required that if it had any objections to the closing of Harrison Street at the railroad tracks, it was its duty to present them when it was permitted to intervene as an interested party, and took part in the argument of this appeal. If it failed to object at a time when it might have objected, it will not be heard to do so later, to the prejudice of the railroad company and other interested parties, who will have been put to great expense because of its failure to object when it might have done so.

The order of the Commission, dated December 11, 1934, dismissing the joint petition of the Pennsylvania Railroad Company and the Borough of Penn for a rehearing and reconsideration of the Commission's final order of April 2, 1934 is, for these reasons, affirmed, subject to a corresponding extension of time for the performance of the work, necessitated by our order of supersedeas, and the appeal therefrom is dismissed.