Townsend *v.* Pittsburgh, Appellant.

Argued October 7, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

454

*Louis Dadowski,* with him *J. Frank McKenna, Jr.,* for appellant.

*Wallace E. Edgecombe,* for appellee.

*A. H. Rosenberg,* with him *Rosenberg & Rosenberg,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, January 3, 1956:

In this action of trespass for personal injuries suffered by plaintiff in a fall on a city street, the jury returned a verdict for plaintiff against the city and for the city against the additional defendant, John A. Johnson & Sons, Inc. (herein called "Johnsons"). The court below refused the city's motions for judgment n.o.v. and new trial, but entered judgment n.o.v. for Johnsons.[1] The city appeals.

By contract with the United States Government, Johnsons, as general contractor, proceeded in 1950 to construct the Veterans Hospital in the city of Pittsburgh. The contract provided, inter alia: "c. Transportation Facilities. The Contractor shall make an *investigation* of available roads and streets, . . . and . . . conditions affecting the transportation of materials . . . to the site . . . [It] will be required to limit the loads

---

[1] Turpin & Stewart had been joined as additional defendants, but no service having been made upon them, the case proceeded against the City and Johnsons.

hauled over Brackenridge Street and other *streets in the immediate vicinity of the project* to the degree necessary *to maintain the surface* of these streets, and to maintain and *restore the streets in a manner satisfactory to the City* . . . [and] will secure . . . all necessary permits for the use of City streets . . ." (Italics supplied).

Johnsons then contracted with Turpin & Stewart, for a consideration of $488,000, to excavate, fill and back fill for the building, and to remove rubbish from the site. This contract provided that Turpin & Stewart would perform their work "under the *direction* of [Johnsons] . . . and to the satisfaction of the architect, the owner of the premises, and [Johnsons]." (Italics supplied).

From October, 1950, and continuing through and beyond April, 1951, trucks under the supervision of Turpin & Stewart hauled dirt and rubbish over a number of streets including Enfield Street. At the point of its intersection with Morewood Avenue, as at other places on the streets, the heavy hauling created holes and ruts. Turpin & Stewart placed over the holes at this point a plank which was used by pedestrians to go from Enfield Street to Morewood Avenue. On August 10, 1951, some 3 months after the hauling ceased, as the plaintiff walked over the plank, it tilted and caused her to fall, as a result of which she suffered serious injuries. The proof established that the plank was insecure and unfirm because of the uneven surface of the street.

It was established that Johnsons did none of the hauling, nor did they control or direct the manner of doing the work.

The city contends, (1) that by virtue of the quoted provisions of Johnsons' contract with the United States it became a donee beneficiary entitling it to indemnity

by Johnsons; (2) that Turpin & Stewart were agents or servants of Johnsons, who thus became liable for the negligent acts of Turpin & Stewart,—this on the strength of the provision that Turpin & Stewart were required to perform their work under "the direction . . . and to the satisfaction of" Johnsons; and (3) that the verdict was excessive.

To support its claim as a donee beneficiary the city relies upon Restatement, Contracts, Section 133, which provides: "(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is . . . (a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary."

But the question is not only whether the city is a donee beneficiary under the provision quoted, but also, if it is such, *of what* could it be declared donee beneficiary. It does not "appear from the terms of the promise" that Johnsons were to be indemnitors of the city against or for any recovery by third parties for injuries resulting from improper maintenance of the streets. The provision dealt with "transportation facilities" and required only that Johnsons *"restore* the streets in a manner satisfactory to the City." We cannot conceive from these words a contract of indemnity for damages payable for personal injuries resulting from negligent conduct. In addition, Restatement, Contracts, §145, provides: "A promisor bound to the United States . . . by contract to do an act or render a service to some or all of the members of the public, is subject to *no duty under the contract* to such mem-

bers to give compensation for the injurious conse-
quences of performing . . . it, unless, (a) an intention
is manifested in the contract . . . [that such compensa-
tion be made], . . ." (Italics supplied). Nowhere in the
contract are there any words evincing an intention to
make Johnsons liable under the circumstances of this
case. At most,—and this we do not decide,—it might
be argued that the provision makes the city a donee
beneficiary of the promise *physically to repair or re-
store* the streets to their former condition.

Nor can we subscribe to the claim that Turpin &
Stewart were employes or servants of Johnsons. The
provision that the work to be performed by the sub-
contractor shall be "under the direction of" and "to
the satisfaction of" the contractor is common in such
contracts and is necessary to orderly and proper com-
pletion of the work required by the general contract.
Without more, it does not make the subcontractor an
employe, but on the contrary, an independent contrac-
tor. Here, the performance and the manner of doing
so were in the subcontractor only; and Johnsons gave
no directions in that regard. As stated in *Pennsylva-
nia Railroad Company v. Allegheny County*, 324 Pa.
216, 219, 188 A. 178, these provisions are " 'for the pur-
pose of guaranteeing ultimate performance in accord-
ance with the agreement, not to fix control over the
means and manner of execution.' . . . 'There necessarily
must be a certain control by the contractee of all under-
takings . . . otherwise he could not safeguard himself
as to the satisfactory accomplishment of the work.' "
Nothing in the contract provided that Johnsons were
to control the employes of Turpin & Stewart, or the
manner of performance, nor did they do so; and they
cannot be held liable: *DiGregorio, Admr. v. Berg*, 359
Pa. 376, 59 A. 2d 80. Not being master or employer,
Johnsons cannot be held liable for the negligence of

458

Turpin & Stewart: *Sarne v. Baltimore & Ohio Railroad Company*, 370 Pa. 82, 87 A. 2d 264; *Silveus v. Grossman*, 307 Pa. 272, 161 A. 362.

The verdict was not excessive. There was proof that plaintiff, approximately 37 years of age, suffered permanent disability of 50%, and that she is still unable to work, whereas she had been gainfully employed with average weekly earnings of $35.68. Liquidated damages were $5,026.00. Estimated future medical expense was $1,000.00. These exclude pain and suffering and loss of future earnings. We cannot say that a verdict of $15,000 under the circumstances of this case "is so grossly excessive as to shock our sense of justice and to indicate a clear abuse of discretion on the part of the court below": *Hutchison v. Pennsylvania Railroad Company*, 378 Pa. 24, 31, 105 A. 2d 356.

Judgment affirmed.