Department of Highways, Appellant, *v.*
Pennsylvania Public Utility
Commission.

Argued December 13, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Nelson M. Galloway,* Assistant Attorney General, with him *John R. Rezzolla, Jr.,* Chief Counsel, and *David Stahl,* Attorney General, for Pennsylvania Department of Highways, appellant.

*Miles Warner,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Allen Lesley,* with him *H. Merle Mulloy,* for railroad, intervening appellee.

OPINION PER CURIAM, March 21, 1962:

This is an appeal by the Department of Highways of the Commonwealth of Pennsylvania (hereinafter called "Department") from an order of the Pennsylvania Public Utility Commission, dated February 20, 1961, refusing the Department's petition of August 12, 1959, seeking amendment and modification of the final order of the commission of April 21, 1958. This order allocated against the Department 96.5 per cent of the cost of reconstructing a railroad bridge of the Reading Company across the state highway in Lower Gwynedd Township, Montgomery County.

The original order of allocation by the commission was dated June 2, 1952. It directed Reading Company.

to do the work and provided that it should be reimbursed by the Department of Highways, the County of Montgomery, and Lower Gwynedd Township to the extent of 25, 18, and 3 per cent, respectively. The actual cost of the bridge reconstruction was $434,881.46 for portions of which amount Reading Company was reimbursed in accordance with the commission's order of June 2, 1952. Reading Company filed a petition on July 7, 1956, asking the commission to reopen the proceeding and modify the commission's order of allocation of June 2, 1952, on the ground that the Department had initiated a project with the Federal Bureau of Public Roads for an allocation of federal funds. After hearing on Reading Company's petition, the commission, by its order of April 21, 1958, reallocated the costs of construction of the crossing improvement, and directed the Department to pay Reading Company, the County of Montgomery, and Lower Gwynedd Township the sums of $220,000, $75,000, and $12,000, respectively.

On May 9, 1958, the Department filed a petition under section 1006 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1396, for rehearing and modification of the commission's order of April 21, 1958, on the ground that the application for federal funds covered only highway construction in the vicinity of the crossing site, and did not include any of the cost of the new railroad bridge. By letter dated July 16, 1958, and received on July 17, 1958, the commission refused the Department's petition of May 9, 1958, for rehearing. The Department, on August 18, 1958, appealed to this Court. In *Department of Highways v. Pennsylvania Public Utility Commission,* 189 Pa. Superior Ct. 111, 115, 149 A. 2d 552, by opinion dated March 18, 1959, we held that the appeal was not taken within the thirty-day limitation, and quashed the appeal. The Department's petition for allocatur was refused by the Supreme Court of Pennsylvania on June 18, 1959.

Thereafter, the Department, on August 12, 1959, filed a petition under the provisions of section 1007 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1397, asking the commission to reopen, rehear, and reallocate the construction costs of this railroad bridge in Lower Gwynedd Township. The Department's petition of August 12, 1959, reiterated certain averments contained in its previous petition filed under section 1006, and set forth in general and indefinite terms certain additional allegations which purportedly constituted new facts and changed conditions which would warrant reopening of the reallocation order of April 21, 1958. In summary, the Department's petition to reopen under section 1007 alleged that the Department actually constructed 2,709.91 more linear feet of highway than the 4,207.19 feet over which the commission assumed jurisdiction, and that the total federal funds received for all highway construction at this point were $227,142.10, or $79,857.90 less than the supplemental allocation of $307,000 imposed by the commission in its order of April 21, 1958. It was further alleged that the allocation order "most harshly and grievously penalized the Department of Highways and imposed a burden upon the highway construction moneys collected by the Commonwealth of Pennsylvania." The petition also contained various broad and indefinite averments to the effect that serious and material difficulties had developed since January 1, 1959, "with the result that there is no present expectation in the Department of Highways that the Federal Government will be able to continue the same rate and amount of financing of the said Federal interstate and defense highway system as had been expected in October, 1956 and in April, 1958"; that the fiscal difficulties of the Federal Government with respect to the interstate and defense highway system and federal aid "insofar as human predictability may determine" would result in the discontinu-

ance by the Department of its program for interstate and defense highways or that the Department "must undertake to pay all of the cost thereof out of the funds of the Commonwealth of Pennsylvania alone . . . and await reimbursement for the said outlays of Commonwealth funds until some future undetermined date when the Federal Government's Trustee Fund for the financing of the said Federal interstate and defense highway system shall again become solvent and current." Reading Company filed an answer in which Lower Gwynedd Township joined, opposing any opening of the reallocation order of April 21, 1958, on the ground that the averments in the Department's petition were not material, and also alleging that the reallocation order of April 21, 1958, was, in effect, res judicata. In view of the broad averments of the Department's petition, the commission, on September 21, 1959, ordered the matter set down for hearings which were held April 11, and July 19, 1960. Following the hearings, the commission entered its order of February 20, 1961, denying the Department's petition and refusing to reopen, amend, or alter its reallocation order of April 21, 1958. The present appeal to this Court by the Department of Highways is from the commission's order of February 20, 1961, refusing the Department's petition under section 1007 to reopen the final reallocation order of April 21, 1958.

The order of the commission must be affirmed. Appellant's petition for reconsideration and reopening of the commission's reallocation order of April 21, 1958, filed August 12, 1959, after an appeal from the commission's refusal of appellant's petition for rehearing of the same 1958 order under section 1006 had been quashed, in so far as the petition under section 1007 raised no new matters or presented changed conditions, was properly, and necessarily must have been, dismissed by the commission. A petition to reopen, filed

after the dismissal of a previous petition to reopen an order of the commission, and after the time for appeal had expired and raising no new matters, must be dismissed as an attempt to raise matters previously adjudicated and to evade the statutory time limitation on appeals. Our holding in the analogous case of *Pennsylvania Railroad Company v. Public Service Commission,* 118 Pa. Superior Ct. 380, 389, 179 A. 850, 854, applies and controls here. We there held: "The present appeals are from an order of the Commission refusing to review and reconsider its original order, made nearly four months after that original order of the Commission had become final and not subject to appeal. In an action at law these appeals would not lie, but would be dismissed as an attempt to evade the statute limiting the time within which appeals may be taken: Mayer v. Brimmer, 15 Pa. Superior Ct. 451, 454. The same strict ruling will not be applied in a proceeding of this kind, but the grounds for a reconsideration should be restricted to the new matters and new or changed conditions set up in the joint petition, which had arisen since and were not presented in the [prior] petitions . . . and dismissed by the Commission . . . and not appealed from. . . . Parties, even in a proceeding of this kind, cannot be permitted, by a second motion to review and reconsider, to raise the same questions which were specially considered and decided against them and not appealed from. A motion to reconsider cannot be made a substitute for an appeal, after the time for taking an appeal has expired." To the same effect, see *Beaver Valley Water Company v. Pennsylvania Public Utility Commission,* 140 Pa. Superior Ct. 297, 304, 305, 14 A. 2d 205. Here, the petition of August 12, 1959, for reconsideration was filed long after the time for appeal from the order of April 21, 1958, had expired, and after an appeal to this Court had been quashed as not perfected in time. *Department of Highways v. Penn-*

*sylvania Public Utility Commission,* supra, 189 Pa. Superior Ct. 111, 149 A. 2d 552. Appellant, therefore, is in the same position as though no appeal had been taken from the first refusal of rehearing of the commission's reallocation order of April 21, 1958. When the time passed for appeal from the reallocation order of April 21, 1958, the order became final, and appellant's obligation to pay the costs allocated against it became an adjudicated fact similar, in many respects, to a money judgment. Cf. *Bartron v. Northampton County,* 342 Pa. 163, 167, 168, 19 A. 2d 263.

Appellant's present petition of August 12, 1959, was expressly filed under section 1007 of the Public Utility Law, 66 PS §1397, and not under section 1006, 66 PS §1396. Section 1007 provides: "The commission may, at any time, after notice and after opportunity to be heard as provided in the case of complaints, rescind or amend any order made by it. Any order rescinding or amending a prior order shall, when served upon the person, corporation, or municipal corporation affected, and after notice thereof is given to the other parties to the proceedings, have the same effect as is herein provided for original orders; but no such order shall affect the legality or validity of any acts done by such person, corporation, or municipal corporation before service by registered mail upon such person, corporation, or municipal corporation of the notice of such change." Section 1007 does not authorize the commission or the parties "to breathe life into a belated petition" filed under section 1006. *Paradise v. Pennsylvania Public Utility Commission,* 184 Pa. Superior Ct. 8, 12, 15, 132 A. 2d 754. Proceedings under section 1007 are not restricted to complaint matters but do require notice and opportunity to be heard. *Department of Highways v. Pennsylvania Public Utility Commission,* 185 Pa. Superior Ct. 418, 426, 138 A. 2d 143.

Appellant's allegations and proofs under the instant petition fall into three general classifications. (1) Appellant alleges that the $307,000 which the appellant was ordered to pay by the reallocation order of April 21, 1958, exceeds all federal moneys received on this project by $79,857.90, resulting in a net loss to the Department of this amount, and that no federal funds were received for bridge construction but only for highway construction. (2) Appellant attempted to prove the commission had notice of the Department's application for federal funds at the time of its original allocation order of June 2, 1952. (3) Appellant also made very general allegations; and attempts to show that it is unable to pay the supplemental allocations ordered April 21, 1958, that federal funds are not presently, or in the foreseeable future, available for this or other projects, and that the Commonwealth's entire highway construction program is imperiled now and in the future as a result of the April 21, 1958, allocation order.

(1) The principal and material facts relative to appellant's participation in federal funds in connection with this bridge and crossing project were in existence and known to the commission when it made its reallocation order of April 21, 1958. Appellant received $227,142.10 from the Federal Government for this project on May 20, 1957. Appellant's allegations of unfairness on this basis present no new facts unknown at the time of the order of April 21, 1958. Consequently, these allegations and proofs were not properly cognizable under the present petition since they had already been passed upon and determined by the commission in its allocation order of April 21, 1958. *Pennsylvania Railroad Company v. Public Service Commission,* supra, 118 Pa. Superior Ct. 380, 389, 179 A. 850.

(2) The commission found that there was no substantial evidence showing it had notice as of June 2, 1952, that the Department contemplated applying for

federal aid on this project, especially since appellant's own proofs showed that it did not initiate its request for federal aid until December 15, 1953. In any event, possible notice to the commission of a federal application by appellant prior to the 1952 order became immaterial, since, in making the reallocation of April 21, 1958, the commission acted on evidence of facts then before it showing a substantial and material change of circumstances in that the Department applied for and received federal funds in connection with this particular project. Cf. *Department of Highways v. Pennsylvania Public Utility Commission,* 179 Pa. Superior Ct. 376, 386, 116 A. 2d 855.

(3) Appellant's allegations and proofs regarding the solvency of the Federal Highway Program, possible uncertainty in obtaining federal funds in the future, and the necessity of using Commonwealth funds and awaiting possible federal reimbursement are set forth in vague and uncertain terms, and lie entirely in the area of probability rather than present fact. For instance, the Department's Federal Aid Engineer testified, in substance, that the Department was not receiving as much federal aid as anticipated, and that delays were encountered in obtaining reimbursement for moneys advanced by the Department on federal aided projects. The Director of Fiscal Management for the Department of Highways testified to the same effect on the issue of federal aid. These allegations and proofs did not establish that it was then impossible or even a definite hardship for the Department to pay the allocations made against it in the commission's order of April 21, 1958. The commission acted properly in holding that such allegations and proofs fell far short of establishing such a material and definite change in circumstances as would lead the commission to modify its final order of April 21, 1958. The original allocation and the reallocation of April 21, 1958, based on

the Department's receipt of federal funds, were within the commission's general powers. *Department of Highways v. Pennsylvania Public Utility Commission,* supra, 179 Pa. Superior Ct. 376, 386, 116 A. 2d 855; *Department of Highways v. Pennsylvania Public Utility Commission,* supra, 185 Pa. Superior Ct. 418, 424, 425, 138 A. 2d 143. Whether the circumstances had changed to such an extent as would warrant a modification of the commission's final order was primarily a matter for the commission. The commission could properly find, as it did, that appellant's allegations and proofs had not shown such an actuality or probability of hardship as would warrant the disturbing by the commission of its final reallocation order of April 21, 1958. Certainly we cannot say, on this appeal, that the commission's action refusing to modify its final order, more than a year later, was erroneous or an abuse of discretion (cf. *Smith v. Pennsylvania Public Utility Commission,* 192 Pa. Superior Ct. 424, 431, 162 A. 2d 80) on the vague and indefinite proofs presented by appellant as to alleged changed circumstances in this proceeding.

The order is affirmed.