Malcolm P. and Marjorie Sims Crooks *v.* Pennsylvania Public Utility Commission, Appellee, and Philadelphia Electric Company, Intervening Appellee.

Argued March 2, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER, and ROGERS.

*Robert J. Sugarman,* with him *Bernard A. Ryan, Jr.,* and *Dechert, Price & Rhoades,* for appellant.

*Anthony L. Marino,* Assistant Counsel, with him *Edward Munce,* Acting Counsel, for Commission, appellee.

*Leonard Barrack,* with him *Harold E. Kohn,* for intervening appellee.

Opinion by Judge Wilkinson, April 14, 1971:

This case comes before this Court by way of appeal from an order of the Pennsylvania Public Utility Commission refusing to reopen hearings on Commission order A95154. The precise procedural question is raised by appellee's motion to quash the appeal. The issue which the Court must decide is whether an appeal lies from the Commission's refusal to reopen a matter under Section 1007 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, Art. X, §1007, 66 P.S. 1397. We hold that the appeal does lie.

Philadelphia Electric Company, on March 3, 1969, filed application to obtain a certificate of convenience and necessity to acquire right of way over a portion of land owned by Malcolm and Marjorie Sims Crooks in Solebury Township, Bucks County. On May 4, 1970, the Commission issued its order granting the certificate for the purpose of constructing an electric power transmission line. This was based, *inter alia,* on testimony of Philadelphia Electric Company that "it is not practicable to route the proposed line to avoid the Crooks' property".

A letter dated June 30, 1970, from Walter Hickel, Secretary of the Interior, to George Bloom, Chairman of the Commission, indicated that the United States government was interested in preserving Honey Hollow Watershed National Historic Landmark. The Crooks' property is located in the watershed. In response to Secretary Hickel's letter, a vice- president of the Philadelphia Electric Company, H. T. Bryans, in correspondence dated July 8, 1970, said that the company was acquiring an alternate route which would avoid crossing the watershed. This was diametrically opposite to what the same company's witness had testified at the hearing.

As a result of Bryan's letter, the Crooks filed a petition under Section 1007 of the Public Utility Law to

the Commission on July 16, 1970, to reopen the proceedings docketed at A95154 and rescind the certificate. Their petition was dismissed on August 24, 1970, although no notification was sent to the Crooks' counsel until September 16, 1970. The Commission based its dismissal on lack of timeliness. On October 14, 1970, the Crooks appealed the August 24 order to dismiss to this Court.

Section 1101 of the Public Utility Law reads as follows: "(a) Within thirty days after the service of any order by the commission, unless an application for a rehearing may be pending, and then within thirty days after the service of the order refusing such application, or the service of an order modifying, amending, rescinding, or affirming the original order, any party to the proceedings affected thereby may appeal therefrom to the Superior Court. . . ." (Act of May 28, 1937, P. L. 1053, Art. XI, §1101, 66 P.S. 1431(a).)

Appellees argued that the subordinate clause in this section relates only to pending petitions for rehearing filed under Public Utility Law, Section 1006, as was held in the case of *Beaver Valley Water Co. v. Pennsylvania Public Utility Commission*, 140 Pa. Super. 297, 14 A. 2d 205 (1940). Eliminating the subordinate clause from "unless" to "original order", the section reads: "(a) Within thirty days after the service of any order by the commission, . . . any party to the proceedings affected thereby may appeal therefrom . . ." (Act of May 28, 1937, P. L. 1053, Art. XI, §1101, 66 P.S. 1431(a).)

Both the Commission and the intervening appellee, Philadelphia Electric Company, cite *Beaver Valley* and *Department of Highways v. Pennsylvania Public Utility Commission*, 197 Pa. Super. 350, 178 A. 2d 820 (1962), in support of their proposition that Section 1007 cannot be used to circumvent Section 1006. In

*Beaver Valley,* the time between the order and the appeal was 17 months, and in neither case was any new evidence cited in the Section 1007 rehearing petition. Here, the Section 1007 petition was filed within 10 weeks of the date of the final order and within eight days of the discovery of new evidence indicating that the statement in the Commission's May 4 order that "there was no other way" was quite possibly incorrect. Appellants' petition for rehearing, filed under Section 1007, specified that it was this new evidence which formed the basis of their position. For these reasons, we believe that appellants have not attempted to use Section 1007 to circumvent the time limitations of Section 1006 and that the rule set forth in *Beaver Valley* is therefore inapplicable.

It may very well be that the vice-president of intervening appellee can readily explain to the Commission and to appellants why he advised the Secretary of the Interior on July 8, 1970, two months after the order authorizing the condemnation, that the line could be, and indeed would be, rerouted in a way "which will avoid crossing the Honey Hollow Watershed National Historic Landmark". It seems to this Court that this new circumstance clearly establishes these facts to be outside the rule of *Beaver Valley.* Certainly it was the purpose of Section 1007 to provide the Commission with authority to modify orders made under Section 1006 when the situation has changed, but not, as in *Beaver Valley,* to provide a method to circumvent the time limitations for an appeal or rehearing.

Indeed, this is squarely on point and on all fours with the holding in *Department of Highways v. Pennsylvania Public Utility Commission,* 197 Pa. Super. 350, 178 A. 2d 820 (1962). In that case, the Public Utility Commission had decided on the allocations of costs of a bridge and issued an order on April 21, 1958. The

Department of Highways petitioned for rehearing under Section 1006. This was denied by an order received July 17, 1958. The Department appealed on August 18, 1958, just beyond the 30-day time limit. The appeal was quashed by the Superior Court by opinion dated March 18, 1959, and reported in 189 Pa. Super. 111, 149 A. 2d 552 (1959). The Department's petition for allocatur was refused by the Supreme Court of Pennsylvania on June 18, 1959. On August 12, 1959, the Department filed a petition under the provisions of Section 1007. The petition reiterated certain averments contained in its previous petition set forth under Section 1006 and had some additional allegations "purportedly" constituting new facts and changed conditions. The contents of this petition are described in detail in the court's opinion. The Commission ordered the matter set down for hearings which were held on April 11 and July 19, 1960. Following the hearings, the Commission entered its order on February 20, 1961, denying the Department's petition and refusing to reopen, amend or alter its order of April 21, 1958. The Department of Highways then appealed this order refusing its petition under Section 1007. The Superior Court did not quash the appeal but rather considered it on its own merits and affirmed the order of the Public Utility Commission on the merits. There could not be a clearer holding that the denial of a petition properly under Section 1007 is appealable.

Since all parties agree that the petition was under Section 1007, under the decision of the *Department of Highways* case above, this appeal having been filed within 30 days of the service of the order, is timely.

Motion to quash the appeal is dismissed.