Borough of Platea, Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Appellee, and Bessemer and Lake Erie Railroad Company, Intervening Appellee.

Argued February 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Andrew J. Conner,* with him *Dunn & Conner,* for appellant.

*Philip R. Mann,* Assistant Counsel, with him *Edward Munce,* Acting Counsel, for appellee.

*David McNeil Olds,* with him *Eugene K. Connors* and *Reed, Smith, Shaw & McClay,* for intervening appellee.

OPINION BY JUDGE BLATT, July 26, 1974:

This is an appeal by the Borough of Platea (Borough) from an order of the Pennsylvania Public Utility Commission (P.U.C.) which denied the Borough's request for a rehearing and/or rescission or amendment of an order made by the P.U.C. on January 2, 1973. The controversy began when the Bessemer and Lake Erie Railroad Company (Railroad), who have been permitted to intervene in this appeal, informed the P.U.C. by telegram on January 7, 1972 that a sudden failure of the substructure supporting the deck and backwall of a bridge carrying Peach Street over the Railroad track in the Borough necessitated the closing of the bridge to all vehicular traffic. The P.U.C., on that same date, telegraphed an order requiring the Borough to post and maintain detours so as to close off the bridge to traffic.

On January 10, 1972, the P.U.C. ratified its telegram order of January 7, 1972 and further directed that an investigation be conducted to determine the condition of the bridge, the nature and extent of required alterations, if any, and if such is or are required, the parties who should perform the work, bear the cost and thereafter maintain the bridge. The Borough answered that the Railroad had a duty to maintain the bridge and that the present condition of the bridge was due to the Railroad's previous failure in this regard. It also contended that the bridge route is essential for the residents of the Borough and that the Railroad should be responsible for repair or replacement of the bridge.

After hearings, the P.U.C. found that "the existing timber structure carrying Peach Street," i.e., the bridge,

was structurally inadequate and unsafe for highway traffic. Furthermore, it found that a satisfactory near-by alternate route could be used without difficulty. It, therefore, ordered the Railroad to remove the bridge before March 31, 1973, to install and maintain permanent barricades at its own expense, and to "pay all compensation for damages, if any, due to the owners for property taken, injured or destroyed by reason of the abolition. . . ."

The Borough timely petitioned for a rehearing and/or rescission or amendment of the order, but its request was denied on April 10, 1972, and that denial is now the subject of this appeal.[1] In its petition filed in support of this appeal, as required by Section 1101 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended,* 60 P.S. §1431, the Borough alleges that the P.U.C. acted arbitrarily in refusing to conduct a rehearing and/or accept additional evidence which might bear on the P.U.C. findings and require modification of the order. The Borough alleges that the P.U.C. erred in not finding the following: (a) that the bridge's condition resulted from the Railroad's failure to maintain it properly; (b) that the bridge was an important and vital factor to the well-being of the Borough and its citizens; and (c) that the alternate route is inadequate to handle the new volume of traffic and its use constitutes a threat to the health, safety and welfare of the Borough citizens.

As we said in *Department of Transportation v. Pennsylvania Public Utility Commission,* 3 Pa. Common-

---

[1] In compliance with the order, the Railroad removed the bridge on April 13, 1973 and installed permanent barricades on April 23, 1973. The Borough complains that this speedy compliance and an alleged delayed notice from the P.U.C. prevented it from applying for a supersedeas. We find no evidence that the Borough applied for a supersedeas from the order of January 2, 1973 and further question the relevance of this contention in this appeal.

wealth Ct. 554, 557, 284 A.2d 330, 332 (1971), "[t]his Court cannot reverse the Commission in its refusal of a petition for further hearing or its failure to rescind or amend its previous order unless a clear abuse of discretion by the Commission is shown." In an appeal of this nature, therefore, our scope of review is measured by the "abuse of discretion" standard and not by the standard used in review of other P.U.C. orders.

A test used in reviewing the discretionary denial of a petition for rehearing has been to determine whether or not newly discovered evidence or evidence of changed conditions exists which would justify a further hearing. *See, Crooks v. Pennsylvania Public Utility Commission,* 1 Pa. Commonwealth Ct. 583, 276 A. 2d 364 (1971). Here the Borough's petition did not aver the existence of any newly discovered evidence or changed conditions, but merely offered to make further studies available to the P.U.C. relative to the determination of the cost of renovating the alternate route. Some evidence was offered in regard to these costs, and the Borough certainly had the opportunity to make its studies available at the prior hearings. We find, therefore, that there was no abuse of discretion on the part of the P.U.C. in its denial of a further hearing.

In addition, we find no abuse of discretion on the part of the P.U.C. in its refusal to rescind or amend its order. Two hearings were held at which the Borough had the opportunity to support the contentions raised now on appeal and at which arguments thereon were made. At those hearings, sufficient evidence was presented upon which the P.U.C. could have found as it did. Furthermore, although the Borough points to several alleged erroneous findings which it seeks to clarify by the introduction of further evidence, it does not indicate what that evidence is or why it was not previously available. The Borough's petition to the P.U.C. offered merely an engineering study demon-

strating the cost of adequately renovating the alternate route. That study is the only additional evidence which we can evaluate, but it could affect only the allegation in the Borough's petition which asserts that the P.U.C. did not consider the rights of the Borough and its citizens in denying the Borough the right to seek consequential damages. The P.U.C.'s order, however, specifically directed that the railroad must pay all compensation for damages, if any, due to property owners by reason of the bridge's destruction.

This order certainly does not deny the Borough or its citizens the right to damages as provided in Section 411 of the Public Utility Law, 66 P.S. §1181: "The compensation for damages which the *owners of adjacent property taken,* injured or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing . . . shall . . . be ascertained and determined by the commission." (Emphasis added.) Here the Borough has not sought to introduce additional evidence to bolster its argument raised before the P.U.C. that it had a "superior right-of-way" over the bridge and, therefore, that it should be compensated in a lump sum for the improvement of its roads. Neither can we assume that the Borough is an adjacent property owner as the statute contemplates. In fact, the courts have carefully interpreted compensation statutes and have determined that the rights provided by statute do not create or enlarge the rights of adjacent landowners, thereby entitling them to damages to which they were not previously entitled. *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 360, 78 A. 2d 46 (1951). Having accepted the P.U.C. finding that the alternate route is adequate, we must hold that the Borough's request for damages is, in essence, for damages caused by the inconvenience of traveling a short distance out of the way, and it cannot be sustained.

484

*Spang & Co. v. Commonwealth*, 281 Pa. 414, 126 A. 781 (1924). Such consequential damages as have been here requested by the Borough have not, as yet, been recognized as recoverable, and we do not so recognize them.

The record reveals that the hearing, the subject matter of which was made clear to all parties, commenced on May 4, 1972, and was then continued on June 6, 1972. Ten individuals testified, and counsel for all parties were allowed to question each of these witnesses. Oral argument was waived and the parties were given permission to file briefs. The record clearly indicates that evidence was presented on every factual issue with which the Borough now disagrees. The P.U.C.'s order of January 2, 1973 reveals that the evidence was reviewed with care and we find no abuse of discretion on the part of the P.U.C. in its refusal to rescind or amend its order.

For the above reasons, therefore, we

ORDER

Now, July 26, 1974, the order of the Public Utility Commission of April 10, 1973 is hereby affirmed.