Yellow Cab Company of Philadelphia and Dewey Leasing, Inc., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

16

Argued December 4, 1979, before Judges CRUM-
LISH, JR., MENCER, DiSALLE, CRAIG and MacPHAIL.
President Judge BOWMAN and Judges WILKINSON,
JR., ROGERS and BLATT did not participate.

*Jeffrey B. Albert,* with him, *Nathan L. Posner,* of
counsel, *Fox, Rothschild, O'Brien & Frankel,* for
Yellow Cab Company of Philadelphia, petitioner.

*David A. Koss,* for Dewey Leasing, Inc., petitioner.

*Daniel P. Delaney,* Assistant Counsel, with him, *Joseph J. Malatesta,* Deputy Chief Counsel and *George M. Kashi,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, March 10, 1980:

On July 19, 1979, the Pennsylvania Public Utility Commission (PUC) entered an order approving Checker Motor Sales Corporation (Checker) as a creditor for Yellow Cab Company of Philadelphia (Yellow) but disapproving Dewey Leasing, Inc. (Dewey) as a creditor in the same transaction. Yellow and Dewey have appealed the order.

Yellow has been operating as a debtor-in-possession under Federal Bankruptcy proceedings, since April 1, 1978. To secure new taxicabs, Yellow submitted a plan of arrangement with the PUC, seeking approval of a lease-purchase-security transaction involving Checker as seller, Dewey as buyer/lessor and Yellow as lessee/guarantor, which included a pledge of some of Yellow's PUC operating certificates as collateral.

By order adopted November 21, 1978 (entered November 30, 1978), the PUC approved Yellow's amended plan of arrangement, which included a proposal for a pledge of operating rights as to 400 taxicabs. That order contained several conditions for approval of such a pledge. The critical condition, and the condition upon which this appeal arises, was that no operating certificates could be pledged without PUC approval of the specific creditors.

Further, the PUC order expressly stated that it would consider the application for permission to pledge under the procedural provisions governing the issuance and registration of securities, 66 Pa. C.S. §1901 *et seq.*

In January, 1979, Yellow entered into the equipment financing transaction which ultimately resulted in Dewey purchasing 304 new taxicabs from Checker, and leasing those cabs to Yellow for two years. The total purchase price of the taxicabs was $2.1 million.

By order dated January 9, 1979, the United States District Court (Eastern District of Pennsylvania) approved the lease-purchase-security transaction, including the pledge of operating certificates to Checker and Dewey, subject to approval by the PUC.

By letter of April 25, 1979, the PUC stated that the application would be considered as one for certificate rights under 66 Pa. C.S. §1101 *et seq.*, rather than as one for the issuance of securities.

The PUC held public meetings to consider information about the proposed creditors, and, on July 19, 1979, adopted the order approving Checker but disapproving Dewey as a creditor in the transaction, and prohibiting Yellow from pledging operating rights to Dewey.

Initially before us are the PUC's motions to quash and strike this present appeal on the grounds that: (1) Neither Yellow nor Dewey have standing to appeal because they are not parties aggrieved under Pa. R.A.P. No. 501 and, alternatively, (2) if Yellow has standing to appeal, its appeal was untimely under Pa. R.A.P. No. 1512 and, therefore, our court lacks jurisdiction to hear the appeal.

The concept of aggrievement which confers standing on a party to appeal from an order requires that the party having a direct and substantial interest in the subject matter of the litigation, an interest which is immediate and not merely a remote consequence of the judgment. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 191, 346 A.2d 269, 280 (1975).

Yellow's standing is rather apparent. Yellow submitted an application to the PUC for approval of its plan of arrangement. Yellow, as a real party in interest in those proceedings of the PUC, unquestionably has standing to pursue an appeal from the PUC's final order denying its application.

Dewey, not a formal party below, also seeks judicial review of the PUC's order denying its status as an approved creditor in the lease-purchase-arrangement, as an "aggrieved party" within the terms of Pa. R.A.P. No. 501. However, because Yellow has standing to bring this appeal, we need not determine whether Dewey has independent standing because the same issue is presented by both.

As to the issue of appeal timeliness, we note that Yellow appealed from the PUC's order entered July 19, 1979 and dated August 3, 1979, within the thirty-day limit required by Pa. R.A.P. No. 1512.

The PUC nevertheless asserts that this appeal is untimely, on the theory that Yellow was required under Pa. R.A.P. No. 1512 to appeal within thirty days after the PUC letter of April 25, 1979, which stated that the PUC intended to evaluate Yellow's application as one for certificate rights under 66 Pa. C.S. §1101 et seq. Originally, as noted above, the PUC by its November 21, 1978 order had stated that it would use the procedures governing registration of securities at 66 Pa. C.S. §1901 et seq. in evaluating Yellow's proposed creditors.[1]

---

[1] Ordering paragraph 4(3) of the November 30 order stated: In all instances, no certificate shall be pledged or encumbered prior to approval of specific creditor(s) by the PUC *pursuant to the procedures governing registration of securities certificates* under the Pennsylvania Public Utility Code. In no event, may any creditor of [sic] his successors or assigns provide common carrier service without prior commission approval as provided by the Public Utility Code.

The PUC asserts that the April 25, 1979 letter was an adjudication under 2 Pa. C.S. §101. However, in *Callahan v. Pennsylvania State Police,* 39 Pa. Commonwealth Ct. 609, 612, 396 A.2d 81, 83 (1979), this court stated the general rule that ''whether a letter of an agency constitutes an adjudication . . . depends on whether the letter announces a final determination, *inter alia,* of a person's personal or property rights.'' Here, the letter of April 25, 1979 merely informed Yellow of the new procedural framework in which the PUC would consider Yellow's application. The letter was interlocutory, not an adjudication which reached the merits of Yellow's application and therefore, no appeal from it was required. *Gorton v. State Civil Service Commission,* 35 Pa. Commonwealth Ct. 319, 325, 385 A.2d 1026, 1030 (1978).

In conclusion, we deny the PUC's motions to quash this appeal.[2]

On the merits of the appeal, the issue before us is whether the commission erred as a matter of law by applying the certification provisions of 66 Pa. C.S. §1101 *et seq.,* pertaining to application by utilities for

---

[2] The PUC also asserts that Yellow may not now raise the argument that the PUC's failure to act on its application worked a "deemed approval" of the application under 66 Pa. C.S. §1903(a), which provides that:

> If, at the end of 30 days after the filing of a securties certificate, no order of rejection has been entered, such certificate shall be deemed, in fact and law, to have been registered.

The PUC seems to be asserting that, because Yellow did not appeal this deemed approval (occurring, the PUC avers, if at all, on March 5, 1979) within the time limits prescribed by Pa. R.A.P. No. 1512, it cannot now raise the issue on appeal. We might question whether Yellow would have had any reason to appeal from an approval of its application, if in fact, an approval had occurred. However, because of our resolution of the merits of this case, we need not reach that issue.

certificates of public convenience, to the evaluation of the suitability of Yellow's proposed creditors, Dewey and Checker.

Acts which amount to the issuance of securities under 66 Pa. C.S. §1901(b) include:

[A]ny act of a public utility executing, causing to be authenticated, delivering or making any change or extension in any term, condition or date of, any stock certificate, or other evidence of equitable interest in itself or any bond, note, trust certificate *or other evidence of indebtedness of itself*. (Emphasis added.)

Although we agree with the commission that Yellow's operating rights do not qualify as "equitable interest" securities under 66 Pa. C.S. §1901(b), the lease-purchase-security agreement, which provides the pledge of operating rights as security for Dewey's purchase of the cabs from Checker, is an "evidence of indebtedness" and thus can be considered as a security for purposes of evaluation of the propriety of registration by the PUC.

Therefore, the PUC was right in its first approach, and the provisions of 66 Pa. C.S. §1903 are properly the criteria closest to being applicable to the evaluation of the pledge aspect of the lease. We hold that the PUC erred as a matter of law in switching its basis of evaluation from the securities provisions to the operating rights basis of 66 Pa. C.S. §1101 *et seq.*

Applying the terms of 66 Pa. C.S. §1903, the PUC erred in disapproving the pledge of operating certificates to Dewey, while approving the pledge to Checker. Under 66 Pa. C.S. §1903, the PUC shall register securities certificates if it finds "that the issuance or assumption of securities in the amount, of the character, and for the purpose therein proposed, is necessary or proper for the present and

probable future capital needs of the public utility filing such securities certificate" *York Railways Co. v. Pennsylvania Public Utility Commission,* 131 Pa. Superior Ct. 126, 130, 198 A. 920, 922 (1938). On that basis, both Dewey and Yellow are either acceptable or not.

The record clearly illustrates that the lease-purchase-security agreement, approved by the bankruptcy court, is "necessary for the present and probable future capital needs" of Yellow. The PUC's approval of the basic transaction and its purpose directly confirms that conclusion.

As a debtor-in-possession, Yellow's financial condition is unquestionably precarious. As an attempt to recover financially, Yellow entered into the lease-purchase-security agreement using the only collateral in its possession, operating certificates, as security for the purchase-lease phases of the transaction.

The record thus supports, as a matter of law, the propriety of the PUC's approval of the lease transaction under 66 Pa. C.S. §1903, and therefore, both Checker and Dewey are entitled to creditor status.

Moreover, rejection of Dewey as a creditor to the lease transaction on the basis of its fitness to be an operator under 66 Pa. C.S. §1101 *et seq.* is premature because Dewey is not presently seeking to exercise operating privileges.

The PUC asserts that it correctly utilized operating rights criteria to evaluate Dewey's status as a suitable creditor, because Dewey may exercise extensive control over Yellow's operation by holding the certificates.

The PUC's order of November 21, 1978 specifically provides that no creditor may provide carrier service without prior PUC approval. Certainly, there would be time enough for the PUC to review Dewey's

suitability to become an operator under the criteria of 66 Pa. C.S. §1101 *et seq.*, if the occasion would arise.[3]

Therefore, because the PUC erred as a matter of law by disapproving Dewey as a creditor, we reverse its determination.

---

[3] Ordering paragraph 4(1) of the November 30 order stated: In the event that Debtor is required to provide collateral to secure operating funds and/or equipment, . . . from any source (hereinafter referred to as 'creditors') during the duration of this Plan, the Certificate shall, in part, be divisible so that the right to operate 400 taxicabs may be pledged or encumbered by Debtor (an assignment of a Certificate as collateral shall include the right to operate no fewer than 100 taxicabs to any one creditor or group of creditors unless otherwise ordered by the Commission). *Such pledged Certificates may be sold only upon liquidation, dissolution or bankruptcy of Debtor and only to the extent of the amount of such indebtedness according to the following plan:*

(a) The pledged Certificates shall be sold only by the creditor(s) . . . at a public sale advertised in accordance with the provisions of the Uniform Commercial Code then in effect. In no instance shall the creditor or his successor sell such pledged Certificates held by such creditor or his successor except as a block sale to one purchaser, unless otherwise ordered by the PUC. Only so many of the pledged Certificates shall be sold as are necessary to produce sufficient proceeds to satisfy the secured indebtedness of Debtor to such creditor after exhausting any other collateral provided by Debtor.

(b) *At time of sale of such pledged Certificates the labor union then representing the drivers employed by Debtor shall have the right within ten (10) days following the public sale to meet the highest* offer at said public sale and, if such right is exercised, the sale shall be made to such union.

(c) In all instances, *retention* of the pledged Certificates by creditors and/*or transfer of* said *Certificates shall be subject to the jurisdiction of the PUC.* (Emphasis added.)

Accordingly, as noted in a foregoing footnote, we need not decide whether, as Yellow asserts, the PUC's failure to disapprove Yellow's application within the required time limits worked a deemed approval of that application under 66 Pa. C.S. §1903(a).

Also, we need not examine Yellow's claim that the PUC's actions are violative of the supremacy clause of the federal constitution Art. 6, clause 2, on the ground that the PUC's refusal to affirm the pledge interfered with federal bankruptcy jurisdiction under 11 U.S.C. §701 *et seq.;* pursuing that issue is particularly negated by the fact that the federal court's order of May 11, 1979, approving the lease transaction specifically includes reference to the necessity of PUC approval in accordance with the PUC order of November 1978.

We therefore reverse that portion of the PUC's order, adopted July 19, 1979, denying creditor status to Dewey Leasing, Inc., and remand so that the PUC may enter an appropriate order approving the creditor named and the requested pledge.

### ORDER

AND Now, this 10th day of March, 1980, the Pennsylvania Public Utility Commission's motions to strike and quash are denied; the order of the Pennsylvania Public Utility Commission adopted July 19, 1979 (entered August 3, 1979) is reversed to the extent that it denied creditor status and prohibited the pledge of operating certificates to Dewey Leasing, Inc.; and this case is remanded with a direction that the Pennsylvania Public Utility Commission enter an appropriate order approving the creditor named and the pledge requested.

President Judge BOWMAN did not participate in the decision in this case.

Judge DISALLE did not participate in the decision in this case.