Yellow Cab Company of Philadelphia, Petitioner
*v.* Pennsylvania Public Utility Commission, Respondent.

Argued April 7, 1981, before President Judge CRUMLISH and Judges MENCER, ROGERS, CRAIG and PALLADINO. Judges BLATT, WILLIAMS, JR. and MACPHAIL did not participate.

*Jeffrey B. Albert,* with him *Nathan L. Posner,* of counsel, *Fox, Rothschild, O'Brien & Frankel,* for petitioner.

*Daniel P. Delaney,* Assistant Counsel, with him *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, May 28, 1981:

The Yellow Cab Company of Philadelphia (Yellow) appeals from the action of the Pennsylvania Public

Utility Commission (PUC) denying Yellow's application to amend an earlier PUC order. Our review thus extends only to whether the PUC has clearly abused its discretion in refusing the requested amendment.[1] *Borough of Platea v. Pennsylvania Public Utility Commission,* 14 Pa. Commonwealth Ct. 478, 322 A.2d 780 (1974).

On November 30, 1978, the PUC approved a plan of arrangement[2] which included permission for Yellow to pledge portions of its operating authority in secured transactions to raise operating capital or purchase equipment, subject, however, to several conditions. As extracted from the PUC order, those conditions have been as follows:

*Condition 1:* the pledge may be made only to a creditor which is supplying operating capital or equipment;

*Condition 2:* the creditor must be approved by the Commission (the Commission decided, on July 19, 1979, over the dissent of Commissioner Carter, to require that each creditor demonstrate that it can operate taxicabs);

*Condition 3:* the certificates may be pledged only in blocks of one hundred; that is, no creditor may receive the right to operate less than one hundred taxis and the pledges may be made only in groups of one hundred each;

[1] Yellow's petition for review averred only that the PUC had abused its discretion in refusing to amend certain elements of the order in question. Yellow's first brief on this appeal argued exclusively that the PUC had no power to impose those elements in the first instance. On August 8, 1980, after a hearing, we granted the PUC's motion to strike that brief, and permitted Yellow to file a second brief, addressing the issues embraced by its petition for review, which Yellow has done.

[2] Yellow has been operating as a debtor-in-possession under federal bankruptcy proceedings since April 1, 1978.

*Condition 4:* the certificates may be sold only by the creditor;

*Condition 5:* the certificates may be sold only upon the bankruptcy, dissolution or liquidation of Yellow;

*Condition 6:* the certificates may be sold only at a public sale;

*Condition 7:* the certificates may be sold only to the highest bidder;

*Condition 8:* the union representing Yellow's drivers is given ten (10) days to match the highest bid;

*Condition 9:* only so many certificates, or operating rights, may be sold as are necessary to pay the indebtedness then owing Yellow;

*Condition 10:* the Commission must then approve the successful bidder before it may operate the taxis which it purchased;

*Condition 11:* the pledges are valid only if Yellow's plan of arrangement is ultimately confirmed (this condition was added by the Commission in July 1979).

Yellow's application requested the elimination of Conditions 2, 3, 5, and 11.

## Condition 2

Condition 2 was before us in *Yellow Cab Co. of Philadelphia v. Pennsylvania Public Utility Commission,* 50 Pa. Commonwealth Ct. 15, 411 A.2d 1282 (1980) (*Dewey* case), where Yellow appealed a PUC order approving Checker Motor Sales Corporation as a creditor, but disapproving Dewey Leasing, Inc. as a creditor in the same transaction on the basis of lack of fitness as an operator under 66 Pa. C. S. §1101. We held that the PUC erred in applying Section 1101, rather than applying the criteria of 66 Pa. C. S. §1903 governing the issuance of securities; we noted that

evaluation of a creditor's fitness to operate would be premature when the creditor is not presently seeking operating authority. Yellow here concedes that the *Dewey* case decision eliminates the objectionable aspect of Condition 2.

### Condition 11

By order entered March 28, 1980, the PUC essentially removed Condition 11; Yellow's challenge to it is thus moot and we need not address it.

### Condition 3

The Act of June 19, 1980, P.L. 244, amending 66 Pa. C. S. §1103 to provide that operating authority for taxicabs in first class cities shall be embodied in certificates each representing the right to operate one taxicab, as opposed to the previous practice of issuing one certificate granting rights to operate a determinate but variable number of vehicles, has materially altered the posture of this appeal, which Yellow initiated in March 1980. Understandably, because of the time frame, the parties have not directly addressed the implications of the amending act with respect to the substance of Condition 3, which we assume is based to some extent upon the PUC's policy and practice under the old statutory scheme. For this reason, we expressly decline to pass on Condition 3 in this appeal, believing that we should await a more specific context and a more complete record, such as PUC action on a specific proposed transaction, to address that issue.

### Condition 5

The only issue remaining is thus whether the PUC abused its discretion in refusing to remove Condition 5, which conditions the creditor's right to sell any pledged certificates on Yellow's bankruptcy, dissolution, or liquidation.

Although the issue arises in a pledge context, the condition in substance is one attached prospectively to any future sale of the certificates by the secured creditor; it is not a condition limited to the identity or capacity of the pledgee, as in the *Dewey* case. Thus seen, as a condition upon the ultimate transfer of the certificate, the PUC's authority flows from 66 Pa. C. S. §1102, which requires a certificate of convenience for such a transfer, in conjunction with 66 Pa. C. S. §1103(a), which empowers the PUC, in granting certificates to attach conditions; that subsection also provides, however, that those conditions must be "just and reasonable," and it is that standard by which we must measure the propriety of the PUC's action here.

In its application, Yellow asserted that compliance with several of the conditions, including the one which concerns us here, made the pledges "nearly valueless," that several sources of capital had severely questioned the usefulness of the pledges, that others had refused to deal with Yellow because of the conditions, and that the few transactions it had completed subject to the conditions had been at high interest rates because of the limited security afforded creditors by the highly conditioned pledges. Yellow accompanied its application with exhibits to support its contentions.

The PUC refused any amendment, stating only that the conditions "reflected this Commission's belief that its statutory obligations required it to closely monitor the issuance and transfer of those operating rights as collateral" and that the PUC viewed the application "as a request for the Commission to abdicate its supervision of the issuance and transfer of these pledged operating rights."

Here, as in *Erie Lighting Co. v. Pennsylvania Public Utility Commission*, 131 Pa. Superior Ct. 190, 195, 198 A. 901, 904 (1938),

the appellants presented their application . . . setting forth the facts which they deemed material and relevant. The Commission, by disposing of the applications upon such allegations of fact, thereby accepted such facts to be as stated and undertook to dispose of the cases on the records made by the utilities.

We are of the opinion that the PUC did abuse its discretion in refusing to remove Condition 5. Accepting Yellow's assertions as stated, per *Erie Lighting*, it is certainly unreasonable to limit the security offerable to creditors to the situation where the debtor's failure to pay is the result of its virtual inability to pay, offering little or no security against a wrongful refusal to pay—a contingency obviously of equal concern to a creditor. Moreover, because of the creditor reluctance engendered by such a contingent security, the condition may well exacerbate Yellow's admittedly precarious financial condition and thus make its actual collapse more likely.

Such an impediment is not justified by recitation of the PUC's duty to monitor the issuance and transfer of Yellow's authority; nor can we read Yellow's application as requesting abdication of those responsibilities. In view of the presently uncontested conditions, particularly Condition 10, requiring any successful bidder on a sale of pledged certificates to obtain PUC approval before seeking to exercise the operating rights embodied in the certificates, the PUC's primary responsibility of ensuring the provision of adequate service to the public is disserved by this obstacle to reestablishing financial soundness.

Accordingly, we reverse the PUC's order, and remand this case to it with direction to issue an order amending its November 30, 1978 order to conform with this opinion.

### Order

And Now, May 28, 1981, the February 26, 1980 order of the Pennsylvania Public Utility Commission at Application Docket No. A. 10548, is reversed, and this case is remanded to the Pennsylvania Public Utility Commission with direction that it issue a new order amending the February 26, 1980 order consistently with this opinion.

Judge Mencer did not participate in the decision of this case.