Log Cabin Property, LP,  :
individually and on behalf of  :
all those similarly situated,   :
     Petitioner  :
           :
    v.      :
           :
Pennsylvania Liquor Control Board, : No. 292 M.D. 2020
     Respondent : Argued: November 17, 2021

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge[1]
    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE ANNE E. COVEY, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY         FILED:  May 27, 2022

Before this Court is the Pennsylvania Liquor Control Board's (PLCB)[2] Preliminary Objection to the petition for review in the nature of a class action complaint (Complaint) Log Cabin Property, LP filed, individually and on behalf of all those similarly situated (Log Cabin) against the PLCB, in connection with this Court's May 1, 2020 Order in *MFW Wine Co., LLC v. Pennsylvania Liquor Control Board*, 231 A.3d 50 (Pa. Cmwlth. 2020) (*MFW I*) (Brobson, J., single judge op.), *aff'd per curiam*, 247 A.3d 1008 (Pa. 2021).  In *MFW I*, this Court granted peremptory judgment in mandamus and summary declaratory relief in favor of MFW Wine Co., LLC (MFW), A6 Wine Company (A6), and GECC2 LLC d/b/a

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] "The PLCB regulates the distribution of beverage alcohol in Pennsylvania, operates [580 Fine W]ine and [Good S]pirits stores statewide, and licenses 20,000 alcohol producers, retailers, and handlers."  www.media.pa.gov/pages/liquor-control-board-details.aspx?newsid=566  (last visited May 26, 2022).

Bloomsday Café (Bloomsday Café) (collectively, *MFW I* Petitioners), related to the PLCB's failure to carry out the General Assembly's directive to permit properly licensed companies to sell and deliver special orders (SOs) directly to their customers without added handling fees.[3]

## Background

Before June 8, 2016, SO customers, like Bloomsday Café, that wished to purchase a class, variety, or brand of liquor or alcohol not then available from a PLCB Fine Wine and Good Spirits store (PLCB Store) could place SOs for the items with licensed importers or vendors, like MFW or A6. However, the licensed importers or vendors were required to deliver the SOs to PLCB Stores, where the customers had to pick them up. The PLCB charged the customers a handling fee for each bottle purchased in this process.

On June 8, 2016, by enacting Section 3 of Act 39,[4] the General Assembly amended Section 305(a) of the Liquor Code[5] to provide that SOs may be delivered from a licensed importer or vendor directly to a customer. Section 3 of Act 39 also states that the PLCB may not assess a handling fee on [SOs], and that "[t]he [PLCB] **shall**, by January 1, 2017, implement a procedure for processing [SOs] . . . ." (Emphasis added.) Further, on July 13, 2016, the General Assembly passed an omnibus amendment to implement the Commonwealth's 2016-2017 budget (Section 20 of Act 85 of 2016[6]), which added Section 1799.2-E to The Fiscal Code,[7] and therein provided that "the [PLCB] **may** implement a procedure for

---

[3] SO customers are largely PLCB licensees (i.e., establishments authorized to sell alcohol).
[4] Act of June 8, 2016, P.L. 273.
[5] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 3-305(a).
[6] Act of July 13, 2016, P.L. 664.
[7] Act of April 9, 1929, P.L. 343, *as amended*, added by Section 20 of the Act of July 13, 2016, P.L. 664, 72 P.S. § 1799.2-E (PLCB Procedure).

processing [SOs] . . . by June 1, 2017." (Emphasis added.) The PLCB took the position that implementing an SO processing procedure was discretionary, and the June 1, 2017 date was merely advisory. As a result, to date, the PLCB has not implemented an SO processing procedure, thereby preventing licensed importers and vendors from directly shipping SOs to their customers, and the PLCB continues to assess handling fees on all SOs.

On March 6, 2020, Pennsylvania Governor Tom Wolf (Governor Wolf) issued a Proclamation of Disaster Emergency (Proclamation) in response to the COVID-19 pandemic. *See Wolf v. Scarnati*, 233 A.3d 679 (Pa. 2020); *see also* "Process to Reopen Pennsylvania."[8] On March 16, 2020, the PLCB announced the indefinite closure of the PLCB Stores and licensee service centers effective March 17, 2020, to reduce the spread of COVID-19.[9] On March 18, 2020, the PLCB, with Governor Wolf's authorization, mandated that all retail licensees, clubs, permittees, and producers cease sales of food and alcohol until further notice.[10]

On April 15, 2020, in *MFW I*, MFW and A6 filed a petition for review in this Court's original jurisdiction seeking to enforce their statutory right to direct ship SOs from licensed importers and/or vendors to customers.[11] On April 16, 2020, in *MFW I*, MFW filed an emergency motion for peremptory judgment in mandamus,

---

[8] *See* www.governor.pa.gov/process-to-reopen-pennsylvania/last updated Nov. 19, 2020 (last visited May 26, 2022). On March 19, 2020, Governor Wolf issued an Executive Order that compelled the closure of the physical operations of all non-life sustaining Commonwealth of Pennsylvania businesses. *See id*. On June 3, 2020, Governor Wolf renewed the Proclamation for an additional 90 days. Governor Wolf renewed the Proclamation several times thereafter. *See id*.

[9] *See* www.media.pa.gov/pages/liquor-control-board-details.aspx?newsid=562 (last visited May 26, 2022).

[10] *See* www.media.pa.gov/pages/liquor-control-board-details.aspx?newsid=563 (last visited May 26, 2022).

[11] MFW and A6 explained in *MFW I* that they did not initiate this action before Governor Wolf closed the PLCB Stores because it was not until their Pennsylvania revenue dropped to $0 that they had the economic motivation to lead the charge. *See MFW I* Application for Relief Seeking Damages, Costs, Interest and Attorneys' Fees at 14-15.

and special injunctive and declaratory relief (*MFW I* Motion), and requested an expedited hearing.[12]

On April 22, 2020, the PLCB re-opened its SO program to allow retail licensees with wine expanded permits (i.e., those permitted to sell wine to-go) to pick up SOs from designated PLCB Stores beginning April 24, 2020.[13]  Also on April 22, 2020, MFW and A6 filed an amended petition for review in *MFW I*, adding Bloomsday Café as a petitioner.  On April 28, 2020, this Court conducted a hearing on the *MFW I* Motion.

On May 1, 2020, relative to the *MFW I* Motion, the Court granted summary relief in the *MFW I* Petitioners' favor with respect to amended petition Count III (Declaratory Judgment), and declared that Section 305(a) of the Liquor Code, *as amended*, (1) prohibits the PLCB from charging a handling fee on SOs delivered directly to customers, and (2) requires the PLCB to implement a procedure to process SO direct shipments.  *See MFW I*.  With respect to amended petition Count I (Mandamus), the Court granted summary relief in the *MFW I* Petitioners' favor and issued a writ of mandamus: (1) directing the PLCB to allow licensed vendors and licensed importers to ship SOs directly to customers, and (2) directing the PLCB to implement a procedure for processing SO direct shipments.  The Court denied the *MFW I* Motion in all other respects (Count II (Injunctive Relief)).  *See MFW I*.

---

[12] "Consistent with the applicable rules of appellate procedure, the Court [] treated [the *MFW I*] Petitioners' [M]otion as an application for special and summary relief.  *See* Pa.R.A.P 123, 1532." *MFW I*, 231 A.3d at 52 n.2.

[13] *See* www.media.pa.gov/pages/liquor-control-board-details.aspx?newsid=566  (last visited May 26, 2022).  Thereafter, the PLCB progressively expanded its access to the PLCB Stores to retail customers and licensees.  *See* www.media.pa.gov/pages/liquor-control-board-details.aspx?newsid=569 (last visited May 26, 2022).  On May 1, 2020, the PLCB announced that it would resume fulfillment of retail licensees' wine and spirits orders through the PLCB Stores and licensee service centers.  *See id*.  By the end of June 2020, 559 PLCB stores and all 13 of the PLCB's licensee service centers were open with limited in-store public access.  *See* www.lcb.pa.gov/About-Us/News-and-Reports/Documents/PLCB%20FY%202019-2020%20Annual%20Report.pdf (last visited May 26, 2022) at 25.

Specifically relative to the *MFW I* Mandamus, this Court ruled:

> [A]ll of the elements for issuance of a writ of mandamus are present. Mandamus is appropriate where, as is the case here, an agency is operating under a "mistaken view of the law that it has discretion to act when it actually does not." *Weaver v. Pa. Bd. of Prob.* [*&*] *Parole*, 688 A.2d 766, 776 (Pa. Cmwlth. 1997) (*en banc*) (citing *C*[*n*]*ty. of Allegheny v.* [*Commonwealth*], 490 A.2d 402 (Pa. 1985)); *see also A.S. v. Pa. State Police*, 143 A.3d 896 (Pa. 2016) (affirming award of mandamus based on judicial construction of ambiguous statute). Section 305(a) of the Liquor Code, properly construed, imposes a mandatory duty on [the] PLCB to accept and process [SOs] for direct shipment to customers. It further imposes a mandatory duty on [the] PLCB to implement a procedure for doing so. [The] PLCB has yet to comply with these mandatory duties, depriving licensed vendors, licensed importers, and customers of their statutory right to direct shipment of [SOs] permitted under Section 305(a) of the Liquor Code.

*MFW I*, 231 A.3d at 57.

This Court added:

> [T]he Court recognizes that the time established by the General Assembly for [the] PLCB to implement a direct shipment [SO] process has long passed. Nonetheless, based on the credible evidence adduced during the hearing, the Court is satisfied that implementing a new process for the direct shipment of [SOs] authorized by Act 39 is neither as simple as [*MFW I*] Petitioners suggest nor as complicated (or expensive) as [the] PLCB would have the Court believe. [The] PLCB must be afforded a reasonable amount of time to implement thoughtfully a process, perhaps even an interim one as Petitioners' counsel suggested during the hearing, to provide licensed vendors, licensed importers, and customers a[n] [SO] direct shipment alternative. The Court is confident that [the] PLCB has the resources and ingenuity to do so without unreasonable delay.
>
> In not setting a deadline for [the] PLCB to act, the Court's restraint is also based in part on [the] PLCB's recent decision to re-open [SO] pick[-]up at designated PLCB

facilities, which [the] PLCB suspended when it closed all PLCB [S]tores in response to the COVID-19 pandemic and executive action by [Governor Wolf]. The absence of a direct shipment option for [SOs], coupled with the closure of all PLCB [S]tores, had an obvious impact on Petitioners - who, through their unrebutted testimony at the hearing, established that their businesses rely on the sale, purchase, and delivery of [SO] wines in Pennsylvania. The fact that Petitioners now have some way of selling, ordering, processing, and fulfilling [SOs] through [the] PLCB, though not all of what Act 39 promised, is an improvement over the recent circumstances that prompted them to initiate this lawsuit.

For these reasons, the Court will not, *at this time*, endeavor to set a date by which time [the] PLCB must comply with this Court's Order.[14]

*MFW I*, 231 A.3d at 57-58 (footnote omitted).

On May 6, 2020, Log Cabin filed the Complaint in the instant action, therein alleging that it and those similarly situated have been unlawfully compelled to pick up and pay a handling fee to the PLCB on every bottle of SO liquor or wine

---

[14] The PLCB represented:

Notwithstanding its disagreement with, and appeal of, the Court's May 1, 2020 Order, the PLCB continues to take steps to implement the Court's directive that the PLCB implement a procedure for processing direct shipments within a reasonable time period. The PLCB will continue to do so during the pendency of the *MFW* [*I*] appeal and, thus, the pendency of the requested stay.

PLCB Appl. to Stay Log Cabin's Complaint at 5 n.2. However, at the November 17, 2021 oral argument before this Court, the PLCB admitted that it has not implemented a direct SO delivery procedure, or offered an interim SO solution. Although the PLCB's counsel (Counsel) referenced the PLCB's intended roll-out of a new Enterprise Resource Planning System that will include changes to the PLCB's SO process, he did not represent what the changes would be, and he declared that the earliest the purported roll-out will occur is July 2022.

Counsel suggested that, because the Court did not set a specific date for the PLCB's compliance with the May 1, 2020 Order in *MFW I*, it has not violated that Order, and whether the July 2022 roll-out is an unreasonable delay is a question for a contempt proceeding. When this Court asked why the PLCB has not simply stopped charging the SO handling fee pending the roll-out, Counsel represented that it cannot do so. When asked what would happen if licensees refused to pay the handling fees, Counsel declared that the PLCB would not release the SOs to them.

it purchased since June 1, 2017 (allowing the PLCB to collect millions of dollars in handling fees) and, pursuant to Section 8303 of the Judicial Code, 42 Pa.C.S. § 8303, and *MFW I*, they are entitled to recover damages in the form of all handling fees paid and pick-up expenses incurred due to the PLCB's inaction since June 1, 2017, plus costs, prejudgment interest, and attorneys' fees.

On May 27, 2020,[15] in *MFW I*, the PLCB appealed to the Pennsylvania Supreme Court (30 MAP 2020). On June 5, 2020, the PLCB filed an Application to Stay Log Cabin's Complaint in the instant action pending the Supreme Court's decision relative to *MFW I*. Log Cabin opposed the Application for Stay. However, on June 30, 2020, the parties filed a Joint Application to Stay, which this Court granted the same day.

On March 25, 2021, the Pennsylvania Supreme Court issued a Per Curiam Order (without an opinion) affirming this Court's May 1, 2020 Order in *MFW I*. On April 15, 2021, the parties in this case filed a joint stipulation to lift the stay. On April 28, 2021, this Court lifted the stay and issued a scheduling order.

On May 25, 2021, the *MFW I* Petitioners filed an Application for Relief Seeking Damages, Costs, Interest and Attorneys' Fees (*MFW I* Damages Application), which the PLCB opposed.

On May 28, 2021, the PLCB filed the Preliminary Objection and its supporting brief, arguing that Log Cabin failed to state a viable cause of action because: (1) the PLCB is entitled to sovereign immunity and cannot be held liable for damages under Section 8303 of the Judicial Code; (2) the PLCB is not a "person"

---

[15] On May 7, 2020, the *MFW I* Petitioners filed an application for relief seeking leave to amend their amended petition for review (Amendment Application) so as to allow Bloomsday Café to plead allegations in support of a class action and state its claim for mandamus damages on a class-wide basis. The PLCB filed an answer in opposition to the Amendment Application on May 26, 2020. However, because the PLCB filed a notice of appeal to the Pennsylvania Supreme Court and, after its ruling, *MFW I* Petitioners filed an Application for Relief Seeking Damages, Costs, Interest and Attorneys' Fees, this Court has not yet ruled on the Amendment Application.

within the meaning of Section 8303 of the Judicial Code and, thus, is not liable for mandamus damages thereunder; and (3) mandamus damages are only available under Section 8303 of the Judicial Code to those that bring and successfully obtain mandamus relief, which Log Cabin has not.

On June 28, 2021, Log Cabin filed its response to the Preliminary Objection and its opposing brief, therein arguing: (1) sovereign immunity does not apply; (2) the PLCB is a "person" under Section 8303 of the Judicial Code; and (3) Log Cabin need not have been a party to *MFW I* to recover mandamus damages. On August 6, 2021, the PLCB filed a reply brief.

By September 15, 2021 Order, this Court directed that the PLCB's Preliminary Objection in this matter shall be listed for argument seriately with the *MFW I* Damages Application.[16] Therein, the Court limited argument on the *MFW I* Damages Application to: (1) whether Petitioners may recover mandamus damages from the PLCB; and (2) whether the PLCB is a "person" under Section 8303 of the Judicial Code. With this Court's permission, on October 8, 2021, Log Cabin filed a sur-reply brief.[17]

## Discussion

The PLCB objects to Log Cabin's Complaint pursuant to Pennsylvania Rule of Civil Procedure (Rule) 1028(4), on the basis that it fails to state a legally sufficient cause of action for damages.

---

[16] The allegations in this matter are interrelated with those raised in *MFW I*, and are premised upon this Court's preliminary ruling in that matter. On May 6, 2020, Log Cabin filed an application to consolidate this matter with *MFW I*. By June 4, 2020 Order, this Court denied the request without prejudice pending a similar application having been filed in *MFW I*. To date, Log Cabin has not filed a new consolidation application in this case, nor has a similar application been filed in *MFW I*.

[17] On April 8, 2022, the PLCB filed an Application for Post-Submission Communication. On April 13, 2022, Log Cabin filed an answer in opposition to the Application for Post-Submission Communication.

8

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review [in the nature of a complaint], as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, *it must appear with certainty that the law will not permit recovery*, and any doubt should be resolved by a refusal to sustain them.
>
> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review in the nature of a] complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. *When ruling on a demurrer, a court must confine its analysis to the [petition for review in the nature of a] complaint.*

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (emphasis added; citations omitted). "'[C]ourts reviewing preliminary objections may not only consider the facts pled in the complaint, but also any documents or exhibits attached to it.' *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014)." *Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 311 n.1 (Pa. Cmwlth. 2019).

### (1) Sovereign Immunity

The PLCB first argues in support of its demurrer that Log Cabin's claim is barred by sovereign immunity.[18] Specifically, the PLCB asserts that there is no

---

[18] This Court has recognized:

> [U]nder Rule 1030(a) . . . , all affirmative defenses, including immunity from suit, shall be pled in a responsive pleading under the heading of "New Matter." Pa.R.C[iv].P. [] 1030(a); *see Madden v. Jeffes*, . . . 482 A.2d 1162, 1164 n.2 ([Pa. Cmwlth.] 1984) (noting that [Rule] 1030 "requires that an immunity claim be pleaded as an affirmative defense in a responsive pleading under new matter"). However, in *Stackhouse v. Pennsylvania State Police*, 892 A.2d 54

specific waiver of sovereign immunity which operates to allow Log Cabin's claim and, although actions to restrain state officials from performing affirmative acts are not within the rule of immunity, suits to obtain money damages are, and Log Cabin's tag-along claim is the latter.

Log Cabin responds that the PLCB is not entitled to sovereign immunity in this case because: (1) the PLCB acted outside the scope of its duties; (2) sovereign immunity does not apply to Section 8303 of the Judicial Code because it is a long-standing form of relief expressly authorizing the assessment of damages against a Commonwealth agency; and (3) the General Assembly has made it abundantly clear in other contexts that sovereign immunity does not permit a state agency to retain unlawfully collected funds.

Log Cabin seeks damages from the PLCB pursuant to Section 8303 of the Judicial Code stemming from this Court's ruling in *MFW I* that Section 305(a) of the Liquor Code imposed a mandatory duty on the PLCB to implement a process for licensed vendors and importers to accept and process SOs for direct shipment to customers by June 1, 2017, that the PLCB has yet to comply with its mandatory duty, and that its failure to do so has deprived licensed importers, licensed vendors, and other customers of their statutory right to SO direct shipments. *See MFW I*, 231 A.3d at 57.

"Generally, the Commonwealth and its agencies, officials and employees acting within the scope of their duties are immune from suits for damages."[19] *Stackhouse v. Pa. State Police*, 892 A.2d 54, 58 (Pa. Cmwlth. 2006);

---

(Pa. Cmwlth. [2006]), . . . this [C]ourt noted that the matter may be raised in preliminary objections when to delay a ruling on the matter would serve no purpose.

*Banfield v. Cortes*, 922 A.2d 36, 43 n.5 (Pa. Cmwlth. 2007).

[19] Section 102 of the Commonwealth Attorneys Act lists the PLCB among the Commonwealth's independent agencies. *See* Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. § 732-102.

*see also* article I, section 11 of the Pennsylvania Constitution, PA. CONST. art. I, § 11. The Pennsylvania Supreme Court declared: "The constitutionally[]grounded, statutory doctrine of sovereign immunity obviously serves to protect government policymaking prerogatives and the public fisc." *Sci. Games Int'l, Inc. v. Commonwealth*, 66 A.3d 740, 755 (Pa. 2013). "Thus, in [the] absence of constitutional infirmity, courts are not free to circumvent the [l]egislature's statutory immunity directives pertaining to the sovereign." *Id.* However, "[t]he Pennsylvania Constitution provides that the Commonwealth and its officers and employees may [] be sued where the General Assembly has authorized the suit."[20] *Russo v. Allegheny Cnty.*, 125 A.3d 113, 116 (Pa. Cmwlth. 2015), *aff'd*, 150 A.3d 16 (Pa. 2016).

Although the Pennsylvania Supreme Court abolished the sovereign immunity doctrine on July 14, 1978 in *Mayle v. Pennsylvania Department of Highways*, 388 A.2d 709 (Pa. 1978), "the General Assembly enacted [Section 2310 (]Act 152[),] which reinstated the doctrine of sovereign immunity in September 1978[.]" *Kapil v. Ass'n of Pa. State Coll. & Univ. Faculties*, 470 A.2d 482, 484 (Pa. 1983). Therein, the General Assembly specified:

> Pursuant to section 11 of [a]rticle [I] of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such

---

[20] Because immunity remains the rule under what is commonly known as the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521-8528, exceptions thereto must be narrowly construed. *See Gale v. City of Phila.*, 86 A.3d 318 (Pa. Cmwlth. 2014); *see also Quinones v. Dep't of Transp.*, 45 A.3d 467 (Pa. Cmwlth. 2012).

cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa.C.S. § 2310. This Court explained, in *Rank v. Balshy*, 475 A.2d 182 (Pa. Cmwlth. 1984), *aff'd*, 490 A.2d 415 (Pa. 1985), "that after our Supreme Court abolished traditional sovereign immunity in *Mayle* . . . , the legislature replaced it with statutory language, [*see*] 42 Pa.C.S. §§ 8521-8528, but the fact remain[ed] that the only purpose of that statute was to restore sovereign immunity where it formerly existed." *Id*. at 185.

Moreover, since 1976 (four years before Act 152 was passed), Section 8303 of the Judicial Code has declared: "A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law **shall be liable in damages to the person aggrieved by such failure or refusal**." 42 Pa.C.S. § 8303 (emphasis added). It does not appear that claims brought pursuant to Section 8303 of the Judicial Code or its now-repealed predecessor, the Mandamus Act of 1893 (Mandamus Act),[21] ever required a waiver because those actions were never barred by sovereign immunity in the first place.

This Court acknowledges that, in Chapter 85 of the Judicial Code, the act commonly referred to as the Sovereign Immunity Act,[22] the General Assembly has waived immunity to allow "**Commonwealth parties**" to be sued for damages arising from the **negligent acts**, 42 Pa.C.S. § 8522(a) (emphasis added), set forth in Section 8522(b) of the Sovereign Immunity Act, *see* 42 Pa.C.S. § 8522(b). Log Cabin's claims do not fall under any of the exceptions listed in Section 8522(b) of the Sovereign Immunity Act.

---

[21] Act of June 8, 1893, P.L. 345, *as amended*, *formerly* 12 P.S. §§ 1911-2002, repealed by the Act of April 28, 1978, P.L. 202.

[22] The Sovereign Immunity Act became effective on December 4, 1980.

12

However, after Act 152 was passed, in *Bullock v. Horn*, 720 A.2d 1079 (Pa. Cmwlth. 1998), wherein the Department of Corrections (DOC) similarly argued that it enjoyed immunity because the petitioners' action was not one of Section 8522(b) of the Sovereign Immunity Act's exceptions, this Court held that DOC did not enjoy immunity, reasoning:

> Th[o]se immunity exceptions only apply to actions "against Commonwealth parties, for damages arising out of a negligent act" and are not applicable in the present factual situation. 42 Pa.C.S. § 8522(a). Moreover, **immunity was not intended as a shield for Commonwealth officials against alleged violations of constitutional and/or statutory rights**.

*Bullock*, 720 A.2d at 1081-82 (emphasis added).

Moreover, Act 152 limited sovereign immunity to "the Commonwealth, and its officials and employees acting **within the scope of their duties**[.]" 1 Pa.C.S. § 2310 (emphasis added). Similarly, a "Commonwealth party" to whom the Sovereign Immunity Act applies is "[a] Commonwealth agency and any employee thereof, but **only with respect to an act within the scope** of his office or employment." 42 Pa.C.S. § 8501 (emphasis added). Since the General Assembly passed Act 152, this Court has clarified: "An agency of the Commonwealth is entitled to complete immunity from taxation as long as it acts in accordance with the powers granted to it. **Where an agency acts outside the scope of the powers granted**[,] **the immunity is lost**." *Se. Pa. Transp. Auth. v. Bd. of Revision of Taxes*, 777 A.2d 1234, 1237 (Pa. Cmwlth. 2001), *aff'd*, 833 A.2d 710 (Pa. 2003) (*SEPTA*) (emphasis added). Accordingly, this Court has concluded "that sovereign immunity does not bar either mandamus or declaratory judgment actions."[23] *Brimmeier v. Pa.*

---

[23] Therefore, the petitioners in *MFW I* were not barred by sovereign immunity.

13

*Tpk. Comm'n*, 147 A.3d 954, 961 (Pa. Cmwlth. 2016), *aff'd*, 161 A.3d 253 (Pa. 2017).

The PLCB contends that the General Assembly declared in Section 8521(a) of the Sovereign Immunity Act: "Except as otherwise provided in [] [S]ubchapter [B (Actions Against Commonwealth Parties)], no provision of [] [T]itle [42] shall constitute a waiver of sovereign immunity for the purpose of [Act 152] (relating to sovereign immunity reaffirmed; specific waiver) or otherwise." 42 Pa.C.S. § 8521(a). The PLCB submits that Act 152's liability limitation prevails over Section 8303 of the Judicial Code's general damages authorization pursuant to Section 1971(a) of the Statutory Construction Act of 1972 (SCA),[24] 1 Pa.C.S. § 1971(a). *See* PLCB Br. at 5-6. However, Section 8303 of the Judicial Code has not before nor after Act 152 been subject to sovereign immunity. In addition, implied repeals are disfavored, particularly when two statutes can be reconciled. *See Harrisburg Area Cmty. Coll. v. Pa. Hum. Rels. Comm'n*, 245 A.3d 283 (Pa. Cmwlth. 2020).

The PLCB also asserts this Court's decision is bound by the Pennsylvania Supreme Court's holding that "[s]uits which seek to compel *affirmative action on the part of state officials or to obtain money damages* . . . are within the rule of immunity[.]" *Phila. Life Ins. Co. v. Commonwealth*, 190 A.2d 111, 114 (Pa. 1963). However, that case did not involve a mandamus claim or

---

[24] Section 1971(a) of the SCA provides:

> Whenever a statute purports to be a revision of all statutes upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statute, such statute shall be construed to supply and therefore to repeal all former statutes upon the same subject.

1 Pa.C.S. § 1971(a). Section 1971(c) of the SCA states: "In all other cases, a later statute shall not be construed to supply or repeal an earlier statute unless the two statutes are irreconcilable." 1 Pa.C.S. § 1971(c).

Section 8303 of the Judicial Code. The PLCB also offered *Finn v. Rendell*, 990 A.2d 100 (Pa. Cmwlth. 2010), a mandamus case, for the same conclusion. However, in *Finn*, the petitioners sought to compel the Commonwealth to reimburse the county for a district attorney's salary the Commonwealth was under no duty to pay, which is not the same fact pattern presented here.

Based on the foregoing, and in light of this Court's ruling in *MFW I* that the PLCB violated a clear statutory mandate, Log Cabin's claim is not barred by sovereign immunity.

### (2) *Person* **Defined**

The PLCB also argues that, even if this Court determines that the PLCB is not entitled to sovereign immunity, as an agency of the Commonwealth, the PLCB is not a *person* under Section 8303 of the Judicial Code and, thus, Log Cabin cannot collect mandamus damages from the PLCB. Log Cabin responds that the PLCB is a *person* under Section 8303 of the Judicial Code. It maintains that the PLCB's argument fails to grapple with the obvious purpose of Section 8303 of the Judicial Code, which is to authorize mandamus damages against government actors that fail to perform their duties.

Neither Section 8303 of the Judicial Code, nor Section 102 of the Judicial Code, 42 Pa.C.S. § 102 (definitions), define *person*. This Court has held that "[w]hen a term is not defined in a statute, we resort to the definitions provided in [S]ection 1991 of the [SCA.]" *Muscarella v. Commonwealth*, 87 A.3d 966, 974 (Pa. Cmwlth. 2014). Section 1991 of the SCA defines ***person*** to "[i]nclude[] a corporation, partnership, limited liability company, business trust, other association, government entity (**other than the Commonwealth**), estate, trust, foundation or natural person." 1 Pa.C.S. § 1991 (emphasis added). Section 1991 of the SCA specifies that the definitions supplied therein apply "when used in any statute finally

15

enacted on or after September 1, 1937, **unless the context clearly indicates otherwise**[.]" *Id.* (emphasis added). Therefore, the Commonwealth is not a "person," as that term is defined in Section 1991 of the SCA, unless the context in which the term appears clearly indicates otherwise.

Importantly, Section 1991 of the SCA's definition of *person* excludes only "the Commonwealth." 1 Pa.C.S. § 1991. The term *Commonwealth*, as used therein could have, but does not, expressly include Commonwealth agencies, nor does it use the broader term "Commonwealth party," as used in Section 8501 of the Sovereign Immunity Act. 42 Pa.C.S. § 8501. Rather, Section 1991 of the SCA defines *Commonwealth* merely as "[t]he Commonwealth of Pennsylvania." *Id.* Neither the SCA nor Section 102 of the Judicial Code define "Commonwealth of Pennsylvania."[25] Moreover, this Court has stated:

> [T]he Commonwealth government and its various agencies and officers are separate entities and [] '**the Commonwealth of Pennsylvania, itself** . . . **is clearly not a Commonwealth agency**[.] . . .' *Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330, 1331 (Pa. Cmwlth. 1996) (emphasis in original)[;] *see also Tork-Hiis v. Commonwealth*, . . . 735 A.2d 1256 ([Pa.] 1999).

*Finn*, 990 A.2d at 105 (emphasis added).

The *Finn* Court reasoned:

> The Commonwealth comprises three branches of government, each divided into many independent subparts. The essence of an action in mandamus is that a specific actor has a non-discretionary duty to perform a particular act. A request that the Commonwealth be ordered to do something begs the question which of the many actors comprising state government is to be held

---

[25] Although Section 102 of the Judicial Code's definition of *Commonwealth government* includes executive and independent "agencies of the Commonwealth[,]" 42 Pa.C.S. § 102 (*see* also "Commonwealth agency" definition), if this Court is bound solely by Section 1991 of the SCA's definition, as the PLCB asserts, then Section 102 of the Judicial Code definitions are inapplicable.

16

accountable. Since merely naming the Commonwealth is insufficient to state a claim against a Commonwealth party, [*see*] *Tork-Hiis*, it would seem self-evident that if a specific state party can be identified as having a mandatory or ministerial duty, that party must be the named defendant, both in order to make out a cause of action in mandamus and to effectuate enforcement of any ensuing order.

*Finn*, 990 A.2d a 106. Applying the *Finn* Court's logic here, it is reasonable to conclude that the General Assembly intended, by excluding *the Commonwealth* from the definition of *person* in Section 1991 of the SCA, that the Commonwealth itself could not be liable for mandamus damages under Section 8303 of the Judicial Code, but individual agencies could be so liable.

The PLCB cites *Commonwealth v. Runion*, 662 A.2d 617 (Pa. 1995), to support its position.[26] However, *Runion* is inapposite. First, the General Assembly legislatively superseded *Runion*.[27] *See Commonwealth v. Veon*, 150 A.3d

---

[26] The *Runion* Court reversed the trial court's order that directed the defendant to pay restitution to the Department of Public Welfare (DPW) pursuant to Section 1106 of the Crimes Code, 18 Pa.C.S. § 1106, because only *victims* were entitled to restitution. At that time, Section 1106(h) of the Crimes Code defined *victim* as "'[a]ny *person*, except an offender, who suffered injuries to his person or property as a direct result of the crime.' 18 Pa.C.S. § 1106(h)." *Runion*, 662 A.2d at 619 (emphasis added). Relying on the SCA's definition of *person*, the *Runion* Court held that, since DPW is "a Commonwealth entity," *id*. at 621, which was excluded from the SCA's definition of *person*, the Court stated it was constrained to conclude that DPW could not be a *victim* to whom restitution was due under Section 1106(h) of the Crimes Code, 18 Pa.C.S. § 1106(h). The *Runion* Court acknowledged that, although defining the term *victim* to include government *agencies* would favor the restitution statute's rehabilitative purpose, "it [wa]s for the legislature, and not for th[e Supreme] Court, to expand the meaning of the term 'victim' under [Section] 1106 [of the Crimes Code] so as to include governmental agencies . . . ." *Id*. at 621.

[27] Effective on July 2, 1995, two weeks *before* the Supreme Court decided *Runion*, on July 18, 1995, the General Assembly amended Section 1106 of the Crimes Code to add "[a]ny other *government agency* which has provided reimbursement to the victim as a result of the defendant's criminal conduct" to the list of entities to whom the courts may order mandatory restitution. Section 1106(c)(1)(ii) of the Crimes Code, 18 Pa.C.S. § 1106(c)(1)(ii) (emphasis added); *see also* Section 1 of the Act of May 3, 1995, P.L. 999 (Spec. Sess. No. 1). In 2009, the Pennsylvania Supreme Court ruled, based on the legislative history of Section 1106 of the Crimes Code, the General Assembly's revisions, and the purpose of the restitution statute, that government agencies that paid money on a victim's behalf were also entitled to restitution. *See Commonwealth v.*

435 (Pa. 2016). Second, the *Runion* Court construed a penal statute, which must be strictly construed, *see* Section 1928(b)(1) of the SCA, 1 Pa.C.S. § 1928(b)(1), whereas Section 8303 of the Judicial Code is to be "liberally construed to effect [its] object[] and to promote justice." Section 1928(c) of the SCA, 1 Pa.C.S. § 1928(c). Third, *Runion* did not involve the situation where, as here, a Commonwealth agency's conduct was contrary to and, in fact, defiant of, a statutory mandate. And, lastly, the *Runion* Court concluded that "[t]he definition of 'person' as found in the [SCA] was amended in 1992, in part, to exclude government entities of the Commonwealth," *Runion*, 662 A.2d at 621 n.4, when the definition amendment actually *added* "government entit[ies]" as *persons*, while simultaneously excluding "the Commonwealth" from the definition, as discussed *supra*. 1 Pa.C.S. § 1991; *see also* Section 2 of the Act of December 18, 1992, P.L. 1333.

Moreover, the context of Section 8303 of the Judicial Code, effective June 27, 1978, clearly intends that mandamus damages may be assessed against a Commonwealth agency, just as the now-repealed Mandamus Act did. Section 16 of the Mandamus Act[28] "provide[d,] in pertinent part: 'If a verdict is found for plaintiff and judgment is entered thereon, or if a judgment is given for him upon a demurrer, . . . he shall recover his damages and costs.' The [Mandamus A]ct [wa]s substantially reenacted at 42 Pa.C.S.[] § 8303 (1980 pamphlet)." *City of Pittsburgh v. Pa. Dep't of Transp.*, 416 A.2d 461, 463 n.3 (Pa. 1980). This Court has since ruled: "There is no doubt that mandamus damages are available under [Section 8303

---

*Brown*, 981 A.2d 893 (Pa. 2009). On October 24, 2018, the General Assembly amended the term *victim* to specifically include "an affected government *agency*[,]" and defined "affected government agency" to include "the Commonwealth," 18 Pa.C.S. § 1106(h) (emphasis added); *see also* Section 1 of the Act of October 24, 2018, P.L. 891, so there is no longer any doubt that the Commonwealth *and* its agencies are included among the parties for whom Pennsylvania courts may order to receive restitution. Notably, the General Assembly has not modified the definition of *person* in Section 1991 of the SCA to exclude Commonwealth *agencies*.

[28] 12 P.S. § 1919 (repealed).

of the Judicial Code)] whenever **a public agency**[’s]"[29] "failure to perform legally mandated ministerial duties results from an erroneous interpretation of the law." *Stoner v. Twp. of Lower Merion*, 587 A.2d 879, 885 (Pa. Cmwlth. 1991) (emphasis added).

Notably, at the time Section 8303 of the Judicial Code was enacted, Section 1991 of the SCA defined *person* as "a corporation, partnership, and association, as well as a natural person[,]" *see Warner-CCC Inc. v. City of Altoona*, 374 A.2d 987, 988 (Pa. Cmwlth. 1977), thereby exposing the Commonwealth and its agencies to liability under Section 8303 of the Judicial Code, until the General Assembly excluded *the Commonwealth* in 1992. There is no indication that the General Assembly intended, by amending the SCA's definition of *person* in 1992, to immunize Commonwealth agencies from mandamus damages.

Finally, based on the fact that the purpose of Section 8303 of the Judicial Code is to authorize mandamus damages against government actors that fail to perform their statutorily mandated duties, Pennsylvania courts have allowed mandamus damages to be assessed against Commonwealth agencies thereunder. *See Richard Allen Preparatory Charter Sch. v. Dep't of Educ.*, 161 A.3d 415 (Pa. Cmwlth. 2017) (*en banc*), *aff'd*, 185 A.3d 984 (Pa. 2018); *see also KIPP Phila. Charter Sch. v. Dep't of Educ.*, 161 A.3d 430 (Pa. Cmwlth. 2017) (*en banc*), *aff'd sub nom. Richard Allen Preparatory Charter Sch. v. Dep't of Educ.*, 185 A.3d 984 (Pa. 2018).

Accordingly, this Court holds that, in the context presented here, the PLCB is a *person* subject to Section 8303 of the Judicial Code.

---

[29] Although the term *public agency* is not specifically defined in the Judicial Code, as stated previously, Section 102 of the Judicial Code defines *government agency* to include "[a]ny Commonwealth agency or any political subdivision or municipal or other local authority, or any officer or agency of any such political subdivision or local authority." 42 Pa.C.S. § 102.

### (3) Mandamus Damages

The PLCB argues that, even if it is liable for mandamus damages under Section 8303 of the Judicial Code as a general matter, it cannot be liable to Log Cabin, because Log Cabin was not a successful mandamus petitioner. Specifically, the PLCB asserts that the use of the article *the* in the phrase *the person aggrieved* in Section 8303 of the Judicial Code suggests that there is a single, identifiable aggrieved party that the Legislature had in mind, *i.e.*, the successful petitioner, and where this Court has addressed mandamus damages, it has done so in the context of a request by the *original* mandamus petitioner for an award of those damages. Finally, the PLCB claims that the Mandamus Act made plain that mandamus damages were awarded to a successful plaintiff incident to having prevailed in the mandamus action.

Log Cabin responds that, although it did not formally style its Complaint as one in the nature of mandamus, it clearly alleges that the PLCB has "failed or refused to perform a duty required by law," as required by Section 8303 of the Judicial Code. Specifically, the Complaint details the PLCB's mandatory duty to implement direct delivery, the harm this caused to Log Cabin and the class, and that the *MFW I* Court already adjudged that the PLCB failed or refused to comply with this duty, and those allegations meet the requisite elements of Section 8303 of the Judicial Code. Moreover, Log Cabin asserts that it previously moved to consolidate this action with *MFW I*, so as to promote judicial economy by joining its putative class action with the one that Bloomsday Café seeks leave to assert in *MFW I*. Log Cabin maintains that, because Bloomsday Café *was* a successful mandamus petitioner in *MFW I*, Bloomsday Café's participation as a joint class representative with Log Cabin would moot the PLCB's argument. Further, Log Cabin argues that, even if the PLCB is technically correct, Log Cabin can easily amend its Complaint to add a more formal mandamus claim, since the PLCB still

has not implemented a procedure for direct delivery of SOs, and continues to charge the unlawful handling fees that are the subject of the instant action.

Pursuant to Section 1921(a) of the SCA, this Court's objective "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The best indicator of the General Assembly's intent is a statute's plain language. *Commonwealth v. Chesapeake Energy Corp.*, 247 A.3d 934 (Pa. 2021). "Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent." *Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.*, 185 A.3d 282, 291 (Pa. 2018).

However,

> [i]f statutory language is "clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." [SCA] § 1921(b). Thus, when the words of a statute have a plain and unambiguous meaning, it is this meaning which is the paramount indicator of legislative intent.

*McKelvey v. Pa. Dep't of Health*, 255 A.3d 385, 398 (Pa. Cmwlth. 2021).

Section 8303 of the Judicial Code clearly and unambiguously intends that, when the PLCB fails or refuses without lawful justification to perform a statutorily mandated duty, it "shall be liable in damages to the person aggrieved by such failure or refusal[.]" 42 Pa.C.S. § 8303. Read in the context of the circumstances before this Court, because the PLCB has been adjudged in a mandamus action to have refused to perform its statutory duty, it is liable for damages "to *the person* aggrieved by such failure or refusal." *Id*. (emphasis added).

This Court acknowledges that the General Assembly in Section 8303 of the Judicial Code's predecessor, Section 16 of the Mandamus Act, declared: "If a verdict is found for plaintiff and judgment is entered thereon, or if a judgment is given for him upon a demurrer, . . . he shall recover his damages and costs." *City of*

21

*Pittsburgh*, 416 A.2d at 463 n.3. In addition, in Section 8303 of the Judicial Code, the General Assembly could have, but did not (as it has done in other circumstances), refer to "*any* person aggrieved." Further, Pennsylvania courts that have considered mandamus damages have generally done so in the context of a request by *the* successful mandamus petitioner for damages. That, alone, is not a sufficient basis for this Court to conclude that a request by Log Cabin or other PLCB licensees under the circumstances presented here are not valid. This case presents a relatively unique situation in which the PLCB's conduct has harmed and will continue to harm hundreds of PLCB licensed entities.

Finally, the *MFW I* Court declared, and the Pennsylvania Supreme Court affirmed the ruling, that **the PLCB's failure** to comply with its duty to implement an SO procedure **has "depriv**[ed **(and continues to deprive**)] **licensed** vendors, licensed importers [(including, but not limited to, MFW and A6)], and **customers** [(which naturally include Bloomsday Café and **Log Cabin**, and others similarly situated)] **of their statutory right** to direct shipment of [SOs] permitted under Section 305(a) of the Liquor Code." *MFW I*, 231 A.3d at 57 (emphasis added). The *MFW I* Court's declaration that licensee customers, such as Log Cabin, have been injured by the PLCB's conduct, as an affected class member, Log Cabin could join *MFW I*'s class action if and when it is permitted to do so, begs the question whether it "*appear*[*s*] *with certainty that* . . . [Log Cabin has failed to state a viable cause of action for damages against the PLCB.]" *Torres*, 997 A.2d at 1245 (emphasis added).[30] Certainly, to the extent this is a matter of first impression,

___

[30] At the November 17, 2021 oral argument before this Court, the PLCB acknowledged that Log Cabin and other PLCB licensees could bring a new mandamus action against the PLCB and, after this Court reached the same conclusion it did in *MFW I*, as *the* successful mandamus petitioners therein, they could petition this Court for damages. This Court is dismayed that the PLCB believes the best use of Commonwealth taxpayers' funds and this Court's time is to litigate serial, identical cases brought by every licensee affected by the PLCB's continued violation of a statutory mandate and the *MFW I* Court's clear May 1, 2020 Order.

whether Log Cabin can claim damages from the PLCB in this case is not clear and free from doubt.

Because the PLCB is clearly liable to licensed vendors, importers, and licensees for provable mandamus damages under Section 8303 of the Judicial Code, and neither that provision nor any caselaw expressly preclude Log Cabin's claim, it does not appear with certainty that Log Cabin cannot recover damages from the PLCB. Accordingly, the PLCB's Preliminary Objection must be overruled.

## Conclusion

"[A]ccept[ing] as true all well-pleaded material allegations in the [Complaint and the documents attached thereto], as well as all inferences reasonably deduced therefrom[,]" and resolving any doubt in favor of overruling the preliminary objection, as we must, because it does not "*appear with certainty that* . . . [Log Cabin has failed to state a viable cause of action for damages against the PLCB]," *Torres*, 997 A.2d at 1245 (emphasis added), the PLCB's Preliminary Objection is overruled.

_____
ANNE E. COVEY, Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Log Cabin Property, LP,        :
individually and on behalf of     :
all those similarly situated,      :
            Petitioner      :
                            :
          v.              :
                            :
Pennsylvania Liquor Control Board,   :    No. 292 M.D. 2020
           Respondent    :

## O R D E R

AND NOW, this 27th day of May, 2022, the Pennsylvania Liquor Control Board's (PLCB) Preliminary Objection to the petition for review in the nature of a class action complaint (Complaint) filed by Log Cabin Property, LP, individually and on behalf of all those similarly situated, is OVERRULED. The PLCB is directed to file an answer to the Complaint within 30 days of the date of this Order.

The PLCB's Application for Post-Submission Communication is DENIED.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Log Cabin Property, LP,        :
individually and on behalf of    :
all those similarly situated,     :
                                :
                      Petitioner  :
                                :
          v.                 : No. 292 M.D. 2020
                                : Argued:  November 17, 2021
Pennsylvania Liquor Control  :
Board,                         :
                                :
                    Respondent :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

DISSENTING OPINION
BY JUDGE WOJCIK               FILED:  May 27, 2022

I dissent.  For the reasons set forth in my Dissenting Opinion filed in *MFW Wine Co., LLC v. Pennsylvania Liquor Control Board* (Pa. Cmwlth., No. 251 M.D. 2020, filed May 27, 2022), I do not agree that the Pennsylvania Liquor Control Board (PLCB) is a "person" subject to damages under Section 8303 of the Judicial Code, 42 Pa. C.S. §8303.  Therefore, unlike the Majority, I would sustain the PLCB's preliminary objection in the nature of demurrer on the basis that Log Cabin Property, LP's claim is barred by sovereign immunity.

                                        _____
                                        MICHAEL H. WOJCIK, Judge

President Judge Cohn Jubelirer joins in this dissent.